Signed and Filed: April 1, 2016

HANNAH L. BLUMENSTIEL
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 13-30827 HLB |
| DAVID WILLIAM BARTENWERFER and KATE MARIE BARTENWERFER, | Chapter 7 |
| Debtors. | |
| KIERAN BUCKLEY, | Adv. Proc. No. 13-03185 HLB |
| Plaintiff, | |
| v. | |
| DAVID WILLIAM BARTENWERFER and KATE MARIE BARTENWERFER, | |
| Defendants. | |

## MEMORANDUM DECISION

### I. INTRODUCTION

This matter came on for trial on January 19 and 22, 2016 on Plaintiff Kieran Buckley's complaint to determine the dischargeability of debt pursuant to 11 U.S.C. § 523(a)(2)(A).[1] The sole issue at trial was whether Defendants David and Kate Bartenwerfer fraudulently omitted disclosing material defects

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, §§ 101–1532, or to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

plaguing real property sold by the Bartenwerfers to Mr. Buckley.

Janet Brayer and Stephen Finestone appeared for Mr. Buckley. Iain MacDonald and Matthew Olson appeared for the Bartenwerfers. After the parties rested, the Court took the matter under advisement.

This memorandum decision constitutes the Court's findings of fact and conclusions of law as required by Rule 52(a) of the Federal Rules of Civil Procedure, as made applicable to this adversary proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. This court has jurisdiction over this action under 28 U.S.C. § 1334(b). The parties have consented to entry of final judgment by this Court in this action, which is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Venue of this lawsuit is proper pursuant to 28 U.S.C. § 1409.

For the reasons that follow, the Court finds that the Bartenwerfers fraudulently omitted disclosing material defects on the subject property and that their related debt to Mr. Buckley is non-dischargeable pursuant to section 523(a)(2)(A).

## II. BACKGROUND

Mr. Bartenwerfer received an MBA from Stanford in 1995. He has no education or training in construction and does not hold a contractor's license. Mrs. Bartenwerfer has worked at McKesson for 10 years and is currently employed as a Manager. She also holds a California real estate agent's license.

Schedule I.[2] The Bartenwerfers operate two businesses: RJUOP I, LLC, a property development business, and Parthenon Design. Statement of Financial Affairs no. 18.

The Bartenwerfers bought and extensively remodeled a home located at 549 28th Street, San Francisco, California (the "Property"), which they subsequently sold to Mr. Buckley. The Bartenwerfers signed disclosure statements regarding the condition of the Property on November 11, 2007. They signed the sales contract on January 24, 2008. Escrow closed on March 14, 2008. Post-sale, Mr. Buckley discovered undisclosed defects and ultimately sued the Bartenwerfers in San Francisco County Superior Court to recoup damages under a number of theories. After a 19-day trial, a jury entered a special verdict. As relevant to this proceeding, the jury found in favor of Mr. Buckley on his claim for Non-Disclosure of Material Facts as follows:

(1) The Bartenwerfers failed to disclose information that they knew or should have known about water leaks, window conditions, permits, and the fire escape.

(2) Mr. Buckley did not know and could not have reasonably discovered this information.

(3) The Bartenwerfers knew or reasonably should have known that Mr. Buckley did not know and could not have reasonably discovered the information.

---

[2] The Court takes judicial notice of the documents filed in the underlying bankruptcy case (case no. 13-30827). Fed. R. Evid. 201 made applicable to bankruptcy proceedings pursuant to Fed. R. Bankr. Proc. 9017.

(4) This information significantly affected the value or desirability of the property.

            (5) Mr. Buckley was harmed.

            (6) The Bartenwerfers' failure to disclose the information was a substantial factor in causing Mr. Buckley's harm.

The state court entered a judgment against the Bartenwerfers in the amount of $444,671. After post-trial briefing, Mr. Buckley accepted a $210,000 reduction in the amount of the judgment, which was amended to award $234,671.

Mr. Buckley requests a finding of non-dischargeability under section 523(a)(2)(A) as to the damages awarded by the state court for non-disclosure of issues relating to water leaks ($48,981), window conditions ($20,000), status of permits ($14,888), and the fire escape ($5,076); the value/cost differential ($90,000); and costs of suit ($40,019.89) for a total non-dischargeable debt in the amount of $218,964.89.

The Bartenwerfers do not dispute the amount of damages, but assert that they did not possess the fraudulent intent necessary to except the judgment from discharge under section 523(a)(2)(A).[3]

---

[3] The Defendants also argued in their trial brief that Mr. Bartenwerfer's alleged fraudulent conduct could not be imputed to Mrs. Bartenwerfer based on their marital relationship. At trial, after Mr. Buckley rested his case-in-chief, the Bartenwerfers moved for a directed verdict pursuant to Federal Rule of Civil Procedure 52(c), applicable in this proceeding via Rule 7052, as to Mrs. Bartenwerfer, on the grounds that Mr. Buckley failed to prove by a preponderance of the evidence that she had the requisite knowledge of the misrepresentations and omissions or intent to defraud, and that a marital relationship is insufficient to impute the fraud of one spouse to the other. The Court denied the motion for a directed verdict, finding that an agency relationship existed between Mr. and Mrs. Bartenwerfer based on their partnership with respect to the remodel project: she was on title to the

## III. LEGAL STANDARDS

### A. Exception to Discharge under section 523(a)(2)

Section 523(a)(2)(A) provides: (a) A discharge under . . . this title does not discharge an individual debtor from any debt— . . . (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by — (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. 11 U.S.C. § 523(a)(2)(A).

To prevail in a section 523(a)(2)(A) action, a creditor must prove five elements by preponderance of the evidence: (1) a misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) the debtor made the representation with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on the representation; and (5) the creditor sustained damage as the proximate result of the representation. Turtle Rock Meadows Homeowners Ass'n. v. Slyman (In re Slyman), 234 F.3d 1081 1085 (9th Cir. 2000).

### B. Collateral Estoppel

Principles of collateral estoppel apply to proceedings seeking exceptions from discharge pursuant to 11 U.S.C. § 523(a). Grogan v. Garner, 498 U.S. 279, 284 n. 11 (1991). Under the Full Faith and Credit Act, 28 U.S.C. § 1738, the

---

Property, signed the disclosure statements relating to the Property, and would financially benefit from the successful completion of the project and sale of the Property.

preclusive effect of a state court judgment in a subsequent bankruptcy proceeding is determined by the preclusion law of the state in which the judgment was issued. Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001) (citations omitted). Thus, California law governs the preclusive effect of Mr. Buckley's judgment.

Under California law, collateral estoppel may only be applied if five threshold requirements are met and if its application furthers the public policies underlying the doctrine. Id. The policies the Court must consider are preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation. Lucido v. Superior Court, 51 Cal. 3d 335, 343, 795 P.2d 1223, 1227 (1990).

The five threshold requirements are: (1) the issue to be precluded from relitigation must be identical to that decided in a former proceeding; (2) the issue must have been actually litigated in the former proceeding; (3) the issue must have been necessarily decided in the former proceeding; (4) the decision in the former proceeding must have been final and on the merits; and (5) the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. Id. The party asserting collateral estoppel bears the burden of establishing these requirements. Id.

Case: 13-03185   Doc# 69   Filed: 04/01/16   Entered: 04/01/16 16:12:35   Page 6 of 20

**IV. DISCUSSION**

**A. Collateral Estoppel Applies to the Jury Verdict**

The state court jury verdict on Mr. Buckley's cause of action for Seller Non-Disclosure of Material Facts found that the Bartenwerfers failed to disclose material information that they knew or should have known (misrepresentation); that Mr. Buckley did not know nor could have known about the omitted information (justifiable reliance); and that the omission of material information was a substantial factor contributing to Mr. Buckley's harm (proximate cause and damages). Thus, these issues, which are identical to most of the elements Mr. Buckley would need to prove in order to prevail on his section 523(a)(2)(A) claim, were actually and necessarily litigated in the state court action, which involved the same parties. No one disputes that the amended judgment is final.

But beyond this, the Court finds that the principles underlying the doctrine of collateral estoppel are furthered by its application here as to these findings which satisfy elements (1), (4), and (5) of a 523(a) action, as enumerated above. The issues have already been decided so it would not be judicially economical to retry them. Furthermore, retrying the issues in this Court could result in a different outcome, which would negatively impact the integrity of the judicial system.

As the Court previously found in the context of Plaintiff's motion for summary judgment, the remaining elements; i.e., knowledge of the falsity of the statement and intent to deceive the creditor, were not actually litigated or decided and were subject to a trial on the merits.

## B. Knowledge and Intent

The scienter requirement for a fraudulent misrepresentation is established by showing either actual knowledge of the falsity of a statement, or reckless disregard for its truth. Gertsch v. Johnson & Johnson, Fin. Corp. (In re Gertsch), 237 B.R. 160, 167 (B.A.P. 9th Cir. 1999). Intent to deceive or reckless disregard for truth can be inferred from the totality of the circumstances. Id. at 167-68. "A representation may be fraudulent, without knowledge of its falsity, if the person making it 'is conscious that he has merely a belief in its existence and recognizes that there is a chance, more or less great, that the fact may not be as it is represented.'" Id. at 168 (quoting Restatement (Second) of Torts § 526, cmt. E (1977)).

An omission gives rise to liability for fraud only when there is a duty to disclose. Citibank, N.A. v. Eashai (In re Eashai), 87 F.3d 1082, 1089 (9th Cir. 1996). "[A] party to a business transaction has a duty to disclose when the other party is ignorant of material facts which he does not have an opportunity to discover." Apte v. Japra M.D., F.A.C.C., Inc. (In re Apte), 96 F.3d 1319, 1324 (9th Cir. 1996).

In addition, California law requires a seller of real property to make certain disclosures of which the seller has knowledge at the time of the disclosure. Cal. Civ. Code §§ 1102 et seq. These disclosures must be made in good faith, which requires honesty in fact in conducting the transaction. Cal. Civ. Code § 1102.7.

At trial, Mr. Bartenwerfer admitted that he understood that the disclosures he made pursuant to California Civil Code section 1102 constituted his representations as to the condition of the Property. These representations belong to Mrs. Bartenwerfer, too, given that she signed them. The substance of these representations and the extent to which they did not accurately or completely disclose the Property's condition, merit further discussion.

On November 11, 2007, the Bartenwerfers signed a Real Estate Transfer Disclosure Statement (the "Disclosure Statement") certifying that the information therein was true and correct to the best of their knowledge as of that date. Plaintiff's Ex. 2 at 3.[4] The Bartenwerfers also signed a Seller's Supplemental to the Real Estate Transfer Disclosure Statement (the "Supplemental Disclosure" and, together with the Disclosure Statement, the "Disclosures") on November 11, 2007, stating that they answered the questions therein in "in an effort to fully disclose all material facts relating to the Property and hereby certify that the information provided is true and correct to the best of my knowledge." Id. at 7.

On January 24, 2008, the Bartenwerfers signed a Contract for the Sale and Purchase of Real Property (the "Contract"), representing that "Seller has no knowledge or notice that the Property has any material defects other than as disclosed by the Seller in the [Disclosure Statement] or other writing

---

[4] Mrs. Bartenwerfer is identified as "Kate Pfenninger," which the Court believes to be her maiden name.

before Acceptance or a soon thereafter as practicable." Plaintiff's Ex. 1 at 6, ¶ 19. The Bartenwerfers made no additional written disclosures beyond what was contained in the Disclosures and Contract. Mr. Bartenwerfer admitted that he understood that he had an ongoing duty to disclose to Mr. Buckley any material defects; i.e., anything a buyer would want to know before purchasing the Property.

### 1. Mr. Bartenwerfer's Credibility

At trial, in an apparent effort to try to protect Mrs. Bartenwerfer from having any findings of fraudulent intent imputed to her, Mr. Bartenwerfer testified that he did not prepare the Disclosure Statement on behalf of Mrs. Bartenwerfer. This testimony contradicted his testimony during the state court trial that he had prepared the Disclosure Statement on behalf of his wife. Reporter's Transcript of Trial Proceedings David Bartenwerfer's Testimony, September 5, 2012 at 94.

In addition, when asked whether Mrs. Bartenwerfer authorized him to complete the Supplemental Disclosure on her behalf, Mr. Bartenwerfer avoided answering the question directly, stating that she sat at the kitchen table while he filled it out but did not herself have the necessary information. This testimony was inconsistent with his testimony during the state court trial which explicitly acknowledged that Mrs. Bartenwerfer authorized him to complete the Supplemental Disclosure on her behalf. Id. at 111-12.

The Court finds that these inconsistent statements, as well as others made during trial, as noted below, significantly

and negatively affect the credibility of Mr. Bartenwerfer's testimony

    2.   <u>Water Leaks</u>

The Bartenwerfers answered "No" to the question on the Supplemental Disclosure that asked: "Are there any past or present leaks or water intrusion from or through the roof, skylights, windows, siding, basement, foundation, or any other source? (please itemize even if leaks have been stopped)." <u>Id.</u> at 6.

At trial, Mr. Bartenwerfer admitted that he paid Freutel Roofing Inc. to repair leaks, specifically a leak above the master bedroom closet near the deck. Freutel Roofing submitted a quote for $1,600 to do work including patching the membrane at the deck area, adding material to the upper roof to get better drainage, and replace and seal base at same area of roof. The quote is dated October 17, 2007, less than a month before the Bartenwerfers signed the Supplemental Disclosure, in which they represented that there were no past or present leaks. In 2008-2009, Mr. Buckley discovered a leak in the master bedroom ceiling, below the deck, as well as other leaks, including one in the media room.

Mr. Bartenwerfer admitted that he did not amend the Disclosures to disclose the leak and testified that he did not believe he had to disclose the leak because it occurred during the construction process and was corrected before the construction was complete. Mr. Bartenwerfer admitted that he did not disclose the leak to his realtor, Peter Monti, because it "didn't feel like a big deal." Mr. Bartenwerfer denies any

intent to deceive and asserts that he made a simple mistake.
The Court does not find Mr. Bartenwerfer's testimony credible,
especially in light of the fact that the leak was repaired so
close in time to the Supplemental Disclosures and at the very
end of the construction on the Property.  Considering the
totality of the circumstances, including those relating to the
other non-disclosures, the Court finds and concludes that the
Bartenwerfers had the requisite knowledge and intent to deceive
Mr. Buckley with respect to non-disclosure of the leak.

      3.   <u>Permits</u>

On the Supplemental Disclosure, the Bartenwerfers indicated
that every time a permit for work on the Property was applied
for, it was issued, but that an inspector did not approve the
work by signing off on each permit after the relevant
construction work was completed.  Plaintiff's Ex. 2 at 6.  The
Bartenwerfers provided an explanation, stating that they let the
"permit to update original kitchen [to] expire because of
floorplan change, new kitchen completed with permits."  <u>Id.</u>  The
Bartenwerfers did not disclose any additional open permits.

At trial, Mr. Bartenwerfer admitted that at the time he
signed the Disclosures he was aware that electrical and plumbing
work had not been approved by an inspector, that the permits had
not received final sign off, and that a lack of final sign off on
electrical and plumbing permits is something a buyer would want
to know.  Mr. Bartenwerfer admitted that as of November 11, 2007
– the date the Bartenwerfers signed the Disclosures – there were
ten permits which had not been signed off as complete.  Mr.
Bartenwerfer asserted that he did not disclose the open permits

because he thought they were "basically done" and would be signed off at any time. But, Mr. Bartenwerfer also admitted that he was aware that the plumbing and electrical permits had not been signed off as final as of January 22, 2008, the date of Mr. Buckley's offer to buy the Property. Though more than two months had passed since they signed the Disclosures, the Bartenwerfers still did not disclose the open permits to Mr. Buckley.

Mr. Bartenwerfer admitted at trial that he received a Notice of Violation, dated January 31, 2008, which stated in relevant part that all permits had expired and no special inspection reports had been submitted (18 reports were required). He also admitted that he did not disclose the Notice of Violation or the expired permits to Mr. Buckley or Mr. Monti, and that he did not provide all permits to Mr. Buckley until after close of escrow. Mr. Monti testified that he had never seen the Notice of Violation and that such a notice would require the Disclosures to be amended. In his defense at trial, Mr. Bartenwerfer stated that the Notice of Violation was "an administrative issue" and that he did not think he had to disclose it. The Court finds that by the end of January 2008, Mr. Bartenwerfer was aware that the undisclosed open permits had expired and still did not disclose them to Mr. Buckley.

On March 13, 2008, the day before escrow closed, Mr. Buckley's realtor, Josh Nasvik, sent an email to Mr. Monti itemizing the remaining repairs to be completed. At trial, Mr. Bartenwerfer testified that he understood that the items on the list were all that needed to be resolved and that the list did

not mention permits.  When asked if he was aware at that time that the electrical permit had not been closed out, Mr. Bartenwerfer testified he was not sure what he thought at that time because "there was confusion" around the electrical sign off; i.e., one of the job cards showed the final electrical inspection was completed on January 30, 2008.

The Court does not find Mr. Bartenwerfer's testimony credible because, on February 19, 2008, Mr. Buckley sent an email to Henry Karnilowicz of Occidental Express, a company helping Mr. Bartenwerfer through the permitting process, stating "we failed yet another electrical inspection." Plaintiff's Ex. 16.  Accordingly, the Court finds that and finds that on March 13, 2008, Mr. Bartenwerfer was aware that the electrical permit had not been closed out.  Mr. Bartenwerfer testified that he did not think he informed Mr. Nasvik or Mr. Monti of the failed inspection prior to the close of escrow.  Mr. Bartenwerfer also admitted that he did not request a modification of the Disclosures to reflect the failed inspection, though he considered it to be material.

Considering the totality of the circumstances, including those surrounding the other material non-disclosures, the Court finds that the Bartenwerfers omitted information about the status of permits up through the time of the close of escrow with the intent to deceive Plaintiff.  The Disclosures would lead a reasonable person to believe that the only outstanding permit issues related to the kitchen, when in fact there were 10 outstanding permits that had continuing issues through to the time of close of escrow in March 2008 and beyond, including

their expiration in January 2008.  Though they received the
Notice of Violation and failed inspections, the Bartenwerfers
failed to notify Mr. Buckley of these issues despite their duty
to do so until sometime after close of escrow.  Accordingly,
the Court finds and concludes that the Bartenwerfers had the
requisite knowledge and intent to deceive Mr. Buckley with
respect to non-disclosure of the status of permits.

    4.   <u>Windows</u>

The Bartenwerfers answered "No" to the question on the Disclosure Statement as to whether they were aware of "any significant defects/malfunctions" in windows.  Plaintiff's Ex. 2 at 3.  They also did not disclose any problems with windows in the Supplemental Disclosure.

At the state court trial, Mike Barbic, a service technician for Pella Windows, testified that on February 7, 2008, he made a site visit to the Property and noted that several windows had been installed "out of square;" i.e., they were set crooked in the frames and did not function properly. Joint Designation of Trial Transcript Testimony – Mike Barbic at 14, 16-18.  Mr. Barbic testified that he advised the Bartenwerfers of the problem and that it was an installation error.  <u>Id.</u> at 22-23.  He recalled telling the Bartenwerfers the following details:

> In specific there was a window in front of the house that I believe there was some kind of a railing or something in the way.  The window wouldn't open all the way, but it would not close all the way.  And there is no adjustments we could to help even – you know, the frame was out of square.  Typically what we would do is we can adjust the hinges to allow the window to close, but in this case the railings were in the way.  And I said there was no way we could fix the window or adjust

Case: 13-03185    Doc# 69    Filed: 04/01/16    Entered: 04/01/16 16:12:35    Page 15 of 20

the window in the condition that it was because I was
not able to open it up to adjust it.

Id. at 24-25. Mr. Barbic also told the Bartenwerfers that a
window in the master bedroom had been installed out of square.
Id. at 29. In addition, Mr. Barbic found that the windows were
sticking between the weather stripping and the paint on the
sash. Id. at 31. Mr. Barbic advised the Bartenwerfers to use
paraffin wax to stop the sticking. Id. Mr. Barbic testified
that the application of wax would not address the out of square
issues. Id. at 32.

At trial in this proceeding, Mr. Bartenwerfer stated that
he did not recall whether someone from Pella Windows had told
him that the windows were out of square and needed to be
reinstalled. He recalled being told that an installed door was
out of square, and that his brother, Dale Bartenwerfer – who is
not a contractor, has no expertise in California building
codes, and has no education or training in building codes –
told him all that of the window were working properly. Mr.
Bartenwerfer testified during his state court trial proceeding
that he did not disclose the problem with the door to Mr.
Buckley because his contractor, Sergio Sepeda, told him that it
was impossible for the doors to have been installed improperly
and that therefore, Mr. Bartenwerfer believed the problem to be
a manufacturing defect. Reporter's Transcript of Trial
Proceedings David Bartenwerfer's Testimony, September 6, 2012
at 13. At trial in this proceeding, Mr. Bartenwerfer testified
that he surmised that the problem with the windows was a
manufacturing defect but does not know for sure. Mr.

Case: 13-03185   Doc# 69   Filed: 04/01/16   Entered: 04/01/16 16:12:35   Page 16 of 20

Bartenwerfer testified that he did not recall disclosing the suspected manufacturing defect to Mr. Buckley or to Mr. Monti.

The Court does not find Mr. Bartenwerfer's testimony that he was unaware that the windows had been installed out of square credible, because: (a) he had a conversation with his brother about whether the windows were working properly; (b) he testified at trial that he believed the window problem to be a manufacturing defect; and (c) Mr. Barbic's testimony as to what he told the Bartenwerfers about the windows being out of square is so detailed and specific and therefore, reliable and credible.

Regardless, even if they believed the window and door problems to be manufacturing defects rather than installation problems, the Bartenwerfers should have disclosed these defects to Mr. Buckley. Pella Windows was asked to come out to the Property as early as January 2, 2008, long before Mr. Buckley delivered his list of repairs to be made. This strongly suggests that the Bartenwerfers were aware of door and window problems before Mr. Buckley discovered them. Accordingly, based on the foregoing and the facts and circumstances surrounding the other non-disclosures, the Court finds and concludes that the Bartenwerfers had the requisite knowledge and intent to deceive Mr. Buckley with respect to non-disclosure of the window problems.

5. <u>Fire Escape</u>

The Disclosures contained no information about a fire escape. On October 26, 2008, Mr. Bartenwerfer received an

email from Mr. Karnilowicz. Mr. Karnilowicz stated in the email,

> I am somewhat concerned about you giving [the buyer] all the plans, which you will have to do, and I hope that he doesn't notice the missing fire escape. I think you ought to wait till the CFC is issued before you hand over the plans or permits.

Plaintiff's Ex. 17. On the same day, Mr. Bartenwerfer received an email from Mr. Buckley which stated,

> For some reason the plans and permits you gave my real estate agent originally do not match or even come close to what you had with the inspector present Friday, ie you had given us 2 stamped pages of drawings while you had in your possession it seemed like 70-80 pages, you had given us one permit and you had 15 permits taken out. I will need a copy of all those plans and the 15 permits as soon as possible.

Plaintiff's Ex. 22.

At trial, Mr. Bartenwerfer testified that Mr. Karnilowicz advised him that he should not provide the plans to Mr. Buckley because, if he did so, he would not be able to get a final sign off on all the building permits. Mr. Bartenwerfer testified that a previous iteration of the plans included a fire escape but the final version did not. He testified that he relied on the approved plans, that the plans did not include a fire escape, that no fire escape was required because it was a two-story house, and that he had not intended to install one.

Contrary to Mr. Bartenwerfer's testimony at trial suggesting that he had no duty to disclose the missing fire escape because it wasn't included in the final plans, the jury in the state court found the omission of the lack of a fire escape was material and caused harm to Mr. Buckley.

Accordingly, based on the email exchange between Mr. Bartenwerfer and Mr. Karnilowicz, the fact that Mr. Bartenwerfer did not initially provide Mr. Buckley with a complete set of drawings and permits, and the facts and circumstances surrounding the other non-disclosures, the Court finds and concludes that the Bartenwerfers possessed the requisite knowledge and intent to deceive Mr. Buckley with respect to non-disclosure of the missing fire escape.

### V. CONCLUSION

Based upon the above findings of fact and conclusions of law, the Court finds that Mr. Buckley has satisfied his burden of establishing by a preponderance of the evidence that the Bartenwerfers's debt to Mr. Buckley with respect to the non-disclosure of water leaks, window conditions, permits, and the fire escape is nondischargeable under section 523(a)(2)(A). Accordingly, the Court will enter judgment in favor of Mr. Buckley consistent with this memorandum decision.

**\*\*END OF ORDER\*\***

# Court Service List

[None]