FILED

DEC 22 2017

**NOT FOR PUBLICATION**

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP Nos. NC-16-1277-BJuF |
| | NC-16-1299-BJuF |
| DAVID WILLIAM BARTENWERFER and | (Cross-Appeals) |
| KATE MARIE BARTENWERFER, | |
| | Bk. No. 13-30827 |
| Debtors. | |
| | Adv. No. 13-03185 |
| _____ | |
| DAVID WILLIAM BARTENWERFER; | |
| KATE MARIE BARTENWERFER, | |
| | |
| Appellants/Cross-Appellees, | |
| | |
| v. | **M E M O R A N D U M**[1] |
| | |
| KIERAN BUCKLEY, | |
| | |
| Appellee/Cross-Appellant. | |
| _____ | |

Argued and Submitted on June 22, 2017,
at San Francisco, California

Filed - December 22, 2017

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Hannah L. Blumenstiel, Bankruptcy Judge, Presiding

Appearances:   Matthew J. Olson of Macdonald Fernandez LLP argued
for appellants/cross-appellees David and Kate
Bartenwerfer; Janet Marie Brayer and Stephen Davis
Finestone argued for appellee/cross-appellant
Kieran Buckley.

Before:   BRAND, JURY and FARIS, Bankruptcy Judges.

---

[1]  This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have, it has no precedential value.  See 9th Cir. BAP Rule 8024-1.

Appellants/cross-appellees David and Kate Bartenwerfer appeal a judgment determining that the debt from a state court judgment owed to appellee/cross-appellant Kieran Buckley was excepted from the Bartenwerfers' discharge under § 523(a)(2)(A).[2]  The bankruptcy court found after a two-day trial that the Bartenwerfers knowingly concealed material defects in a home they sold to Buckley.  Buckley cross-appeals the court's ruling that he was not entitled to attorney's fees incurred for prosecuting the dischargeability action against the Bartenwerfers, because he failed to plead a claim for such fees as required by former Rule 7008(b), in effect at the time the adversary complaint was filed.

We AFFIRM, in part, and VACATE and REMAND, in part.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.    Prepetition events**

**1.    Sale to Buckley**

The Bartenwerfers purchased the property at issue in 2005 (the "Property") with a plan to remodel and sell it. Mr. Bartenwerfer is not a licensed contractor nor does he have any education or training in construction.  Mrs. Bartenwerfer was a licensed real estate agent when they sold the Property to Buckley.

After the purchase, the Bartenwerfers substantially remodeled the Property, increasing its size from 2,600 square feet to 3,900 square feet.  Various contractors and subcontractors completed work on the project; Mr. Bartenwerfer's brother, Dale, who is not

---

[2]    Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.  The Federal Rules of Civil Procedure are referred to as "Civil Rules."

Case: 13-03185   Doc# 179   Filed: 12/22/17   Entered: 12/27/17 09:12:05   Page 2 of 38

a licensed contractor, also did some work on it.

Prior to the Buckley sale, the Bartenwerfers signed disclosure statements regarding the Property's condition known as "Transfer Disclosure Statements" ("TDS"), which are governed by Cal. Civ. Code § 1102 et seq.  The Bartenwerfers made representations as to their knowledge regarding any past or present water leaks, the condition of the roof and windows, and whether any additions or other alterations or repairs were made to the Property without necessary permits or in violation of any building codes.  In the TDS, the Bartenwerfers certified that the information therein was true and correct to the best of their knowledge as of that date.

The Bartenwerfers sold the Property to Buckley, a general contractor, in January 2008.  The Bartenwerfers represented in the sales contract that "Seller has no knowledge or notice that the Property has any material defects other than as disclosed by the Seller in the [TDS] or other writing before Acceptance or as soon thereafter as practicable."  The Bartenwerfers made no additional written disclosures beyond what was contained in the TDS and sales contract.  The parties executed several addenda to the sales contract, including a provision for certain repairs requested by Buckley and a holdback of funds to address outstanding permit and heating issues.

After the sale, Buckley discovered problems with the Property, including water leaks, defective window conditions due to improper installation, open permit issues and fire escape non-

-3-

compliance (the "Subject Defects").[3]  Unable to resolve their
post-sale disputes over issues plaguing the Property, Buckley sued
the Bartenwerfers in state court.

### 2. Buckley's state court action

Buckley's complaint against the Bartenwerfers alleged causes
of action for breach of contract, negligence, negligent and
intentional misrepresentation, and failure to disclose information
in the sale of real estate.  Buckley alleged, in part, that the
Bartenwerfers had intentionally or negligently failed to disclose
defects related to the addition's construction and had failed to
obtain the necessary permits for that construction.  Buckley
sought general and special damages, interest, punitive damages,
rescission of the sales contract, attorney's fees and costs.

After a 19-day trial, a jury entered a special verdict,
finding in favor of Buckley on his causes of action for breach of
contract, negligence and failure to disclose, and finding in favor
of the Bartenwerfers on the causes of action for negligent and
intentional misrepresentation.  For Buckley's claim for
"nondisclosure of material facts" (as titled in the verdict), the
jury found:  (1) the Bartenwerfers did not disclose information
that they "knew or reasonably should have known" about the Subject
Defects; (2) Buckley did not know and could not have reasonably
discovered this information; (3) the Bartenwerfers knew or
reasonably should have known that Buckley did not know and could
not have reasonably discovered the information; (4) this
information significantly affected the value or desirability of

---

[3]  Other defects existed, but the Subject Defects were the
defects relevant to Buckley's § 523(a)(2)(A) claim.

-4-

the Property; (5) Buckley was harmed; and (6) the Bartenwerfers' failure to disclose the information was a substantial factor in causing Buckley's harm.

The jury awarded Buckley damages of $444,671.  The damages relevant here are:

> Nondisclosure of Subject Defects:  water leaks ($48,981); window conditions ($20,000); status of permits ($14,888); cost for installing a needed fire escape ($5,076);

> Price/Value Differential ("PVD"):  $300,000 (difference between price Buckley paid for the Property and its fair market value at time of purchase); and

> Costs of Suit (exclusive of attorney's fees): $40,019.89.

The jury awarded Buckley "$0" for "intentional fraud" and declined to award punitive damages.

The $300,000 PVD award was later reduced to $90,000, as reflected in the state court's remittitur and subsequent amended judgment ("State Court Judgment").  The State Court Judgment provided that Buckley recover from the Bartenwerfers, jointly and severally, $234,671 plus 10% interest from October 4, 2012 until paid and attorney's fees and costs pursuant to a noticed motion.

Buckley thereafter filed his post-trial motion for attorney's fees, seeking $378,491.72.  The issue was fully briefed and a hearing scheduled.  The Bartenwerfers filed their bankruptcy case before the state court could hear the fee matter.

**B.   Postpetition events**

**1.   Buckley's dischargeability complaint**

After the Bartenwerfers filed their chapter 7 bankruptcy case, Buckley filed his dischargeability complaint, alleging that the State Court Judgment was excepted from discharge under § 523(a)(2)(A).  Buckley alleged that the Bartenwerfers had

-5-

concealed from him material information concerning the Property, including that the work performed was not done in compliance with building codes and was done by unlicenced contractors or the Bartenwerfers themselves, and that there were multiple leaks due to improperly installed windows, doors and roofing. Buckley further alleged that the Bartenwerfers did not disclose that all permits were still "open" and that there had been no final sign off on electrical or plumbing work despite the fact that all walls were closed at the time of sale.

Buckley alleged that the Bartenwerfers knowingly failed to disclose information that they knew was material to Buckley, with the intent to induce him to rely on the nondisclosures and to proceed with his purchase of the Property. Buckley alleged that he justifiably relied on the Bartenwerfers' nondisclosures, completed his purchase of the Property and suffered damages as found by the jury.

In his prayer for damages, Buckley requested: (1) a determination that the Bartenwerfers' debt to him, including interest accrued at the legal rate, was nondischargeable; (2) punitive damages; and (3) costs of suit incurred in the adversary proceeding. Paragraph 4 of the complaint's preamble stated that, in addition to the amount of the State Court Judgment, Buckley was "entitled to recovery [sic] attorneys' fees totaling $378,491." Paragraph 13 of the complaint stated: "As a result of Defendant's actions, Plaintiff has suffered damages as found by the jury in the pre-petition state court trial, to wit, $234,671 plus attorneys' fees and costs totaling $378,491." ////

-6-

## 2. Pretrial motions

The Bartenwerfers moved for judgment on the pleadings or, alternatively, for summary judgment on Buckley's § 523(a)(2)(A) claim. The Bartenwerfers maintained that they were entitled to judgment on the basis of issue preclusion, because the jury expressly found that they did not engage in fraud and did not intentionally or negligently misrepresent any facts to Buckley; the jury found only that the Bartenwerfers breached their contract with Buckley, were negligent, and did not disclose facts that they "knew or should have known." The jury also did not award any damages for fraud and declined to award punitive damages, which the Bartenwerfers argued indicated no fraud.

Buckley also moved for summary judgment on the basis of issue preclusion. Part of the jury's damages award was the PVD award under Cal. Civ. Code § 3343, which is a "fraud" damage. Buckley argued that because the state court upheld the PVD award in its remittitur, only reducing it, the court must have concluded that the Bartenwerfers committed fraud. Thus, argued Buckley, because the issue of the Bartenwerfers' fraud was actually litigated and necessarily decided against them (and all of the other elements for issue preclusion were met), he was entitled to summary judgment on his § 523(a)(2)(A) claim. In closing, Buckley stated his intention to move for attorney's fees and costs incurred in the adversary proceeding by separate motion after entry of judgment. He also raised this issue in his trial brief.

The bankruptcy court ultimately denied the parties' dispositive motions.
////

-7-

### 3.   Trial on Buckley's complaint

The bankruptcy court held a two-day trial to determine the sole issue of whether the Bartenwerfers fraudulently failed to disclose the Subject Defects to Buckley.[4]  Several witnesses testified, including the Bartenwerfers, Buckley, their respective real estate agents, and contractors who worked on the Property.

Once Buckley rested his case-in-chief, the Bartenwerfers moved for judgment on partial findings under Civil Rule 52(c) as to Mrs. Bartenwerfer.  They argued that Buckley had failed to produce evidence that Mrs. Bartenwerfer knew of the Subject Defects and intentionally failed to disclose them to Buckley or that she knew anything she had represented in the TDS was false.  The Bartenwerfers argued that the jury's finding of "knew or should have known" was insufficient to show actual knowledge of any fraud by her.  The court denied the Bartenwerfers' motion.

### 4.   Ruling on Buckley's dischargeability complaint

The bankruptcy court entered a Memorandum Decision finding in favor of Buckley and against the Bartenwerfers on Buckley's § 523(a)(2)(A) claim.  Overall, the court found Mr. Bartenwerfer not credible.  His testimony was inconsistent at trial and inconsistent in several respects with his state court testimony.  The court found that the Bartenwerfers had the requisite knowledge and intent to deceive Buckley by failing to disclose the Subject

---

[4]   It is undisputed that the jury had determined all of the other elements of Buckley's fraud claim:  (1) the Bartenwerfers had a duty to disclose and failed to disclose the Subject Defects to Buckley; (2) the Bartenwerfers should have disclosed such items to Buckley; (3) Buckley reasonably relied on the omission of such disclosures in moving forward with his purchase of the Property; and (4) Buckley suffered damages in reliance on the Bartenwerfers' omissions and misrepresentations.

-8-

Defects. Accordingly, the court found that Buckley's damages with respect to the Subject Defects were nondischargeable under § 523(a)(2)(A).

The court entered judgment in favor of Buckley and against the Bartenwerfers for $218,964.89, which consisted of $48,981 for water leaks, $20,000 for window conditions, $14,888 for permit issues, $5,076 for the missing fire escape, $90,000 for the PVD damages and $40,019.89 for the state court costs of suit ("523 Judgment"). The court subsequently granted the Bartenwerfers' motion to alter or amend the 523 Judgment, reducing the PVD damages to $65,000.

### 5. Post-trial fee motions

#### a. Buckley's motion for attorney's fees

Buckley filed his post-trial motion for attorney's fees and interest, requesting $502,942.00 in fees (which included his state court attorney's fees of $378,491) and $349,715 for interest on his attorney's fees and post-judgment interest ("Fee Motion").

The Bartenwerfers opposed the Fee Motion on the basis that Buckley failed to plead a claim for attorney's fees for either the state court action or the adversary proceeding as required under former Rule 7008(b), in effect when he filed his dischargeability complaint. In addition, the Bartenwerfers argued that Buckley's state court attorney's fees were not recoverable because they were "special damages" and were not pleaded with the specificity required under Civil Rule 9(g). If the court was inclined to award any attorney's fees, the Bartenwerfers argued that Buckley was required to apportion his fees and costs incurred in litigating the single claim of the five causes of action that

-9-

related to the adversary proceeding.

In the order on the Fee Motion (the "June 23 Order"), the bankruptcy court applied former Rule 7008(b) and found that Buckley's complaint sufficiently pled a claim for his state court attorney's fees and costs. However, the court denied Buckley's request for his adversary fees, because he had failed to make any demand for them. Finally, the court declined to require Buckley to apportion his state court attorney's fees; the fees sounded in contract, not tort, and therefore they were nondischargeable along with the nondischargeable portion of the State Court Judgment.

The bankruptcy court subsequently reopened the evidentiary record to determine whether Buckley's state court attorney's fees of $378,491 were reasonable and whether the 523 Judgment should have included post-judgment interest on the nondischargeable portion of the State Court Judgment from October 4, 2012, and, if so, what rate of interest should apply – the California rate or the federal rate.

### b. Further proceedings on the Fee Motion

In his supplemental brief, Buckley contended that his request for fees of $378,491 was reasonable given the modest hourly rates charged, a 19-day jury trial and that the parties had litigated the state court action for nearly five years. Buckley further argued that he was entitled to post-judgment interest at the California rate of 10% on the portion of the State Court Judgment determined nondischargeable (now $153,945) and on his state court attorney's fees of $378,491, assuming the bankruptcy court awarded that amount, which resulted in interest of $206,114.31.

The Bartenwerfers argued that Buckley was not entitled to any

-10-

prejudgment interest on the nondischargeable portion of the State Court Judgment. However, if the court was inclined to award it, they contended the interest should accrue at the federal rate in effect at the time the final nondischargeability judgment is entered; that rate was currently .53%. The Bartenwerfers argued that Buckley was not entitled to post-judgment interest as compensatory damages because he failed to allege it in the complaint as required by Civil Rule 8. Furthermore, the court had reopened the record only for the limited purpose of liquidating the reasonable amount of the state court attorney's fees, not to consider interest as compensatory damages.

The Bartenwerfers also contended that Buckley was not entitled to interest on his state court attorney's fees because the state court did not award any such interest. In addition, the June 23 Order stated that the bankruptcy court would only consider whether the 523 Judgment should be amended to include interest on the portion of the State Court Judgment found nondischargeable, not that it would add additional interest on fees, which the state court never awarded.

Finally, the Bartenwerfers disputed the reasonableness of Buckley's state court attorney's fees, contending that at least 531 hours ($182,566.00) of time was excessive because that claimed time arose from unrelated subcontractor litigation involving third parties. They also accused Buckley's counsel of improper "clumping" and including noncompensable time spent on travel and clerical tasks.

### c. Final order on the Fee Motion

The bankruptcy court entered its final order on Buckley's Fee

-11-

Motion, awarding him pre- and postpetition interest at the California rate of 10% on the nondischargeable portion of the State Court Judgment (the "Final Fee Order"). The court denied interest on Buckley's state court attorney's fees, because the State Court Judgment failed to provide for such interest.

With respect to the reasonableness of the state court attorney's fees, the court found that some time entries included noncompensable travel time and clerical tasks "clumped" with substantive legal work. Therefore, it reduced Buckley's fees to $348,483.53. However, the court found that the Bartenwerfers failed to establish that Buckley's fees should be reduced for the alleged time spent on unrelated matters involving third parties; the Bartenwerfers had failed to introduce the state court complaint into evidence and explain why these third-party time entries were unrelated to the claims he had asserted against them that gave rise to the nondischargeable debt.

Thus, the Final Fee Order: (1) awarded Buckley $348,483.53 for his state court attorney's fees; (2) awarded his costs incurred both in the state court action and in the adversary proceeding; (3) ordered that his nondischargeable damages of $153,945 accrue interest at 10% per annum from October 4, 2012 until April 8, 2013, and accrue interest at 10% per annum on and after April 8, 2013; and (4) ordered that Buckley's state court attorney's fees not bear any interest.

> ### d. Buckley's motion to reconsider the Final Fee Order and ruling

Just before the bankruptcy court entered its amended 523 Judgment to reflect the Final Fee Order, Buckley timely filed a

-12-

motion to alter or amend the Final Fee Order.  Buckley contended that the court erred by not awarding interest on his state court attorney's fees, even without an express provision in the State Court Judgment awarding it, because California law provides that, once the "attorney fee award is determined by the trial court, it is added to the judgment, and the total judgment bears statutory interest until paid," citing <u>Lucky United Properties Investments, Inc. v. Lee</u>, 185 Cal. App. 4th 125, 137-38 (2010) ("<u>Lucky</u>").  Therefore, Buckley contended he was entitled to interest on the attorney's fee amount of $348,483.79 and the costs of $30,007.47, accruing from October 4, 2012, at the rate of 10% per annum.  The Bartenwerfers opposed Buckley's motion.

Ultimately, the bankruptcy court decided to reverse itself and grant the reconsideration motion in its entirety, thereby amending the Final Fee Order and the amended 523 Judgment.

**6.  The Second Amended 523 Judgment**

The bankruptcy court entered a Second Amended 523 Judgment, awarding Buckley a nondischargeable judgment of $153,945.00, plus 10% interest accruing on the nondischargeable portion of the judgment as of October 4, 2012, and his state court attorney's fees of $348,483.53 and costs of $30,007.47, plus 10% interest accruing on the fees and costs from October 4, 2012.

These timely cross-appeals followed.

**II. JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I).  We have jurisdiction under 28 U.S.C. § 158.

**III. ISSUES**

1.  Did the bankruptcy court err by declining to apply issue

-13-

preclusion to the jury's findings of fact?

2. Did the bankruptcy court err by not granting Mrs. Bartenwerfer's motion for judgment on partial findings?

3. Was there sufficient evidence of Mr. Bartenwerfer's knowledge and intent to find him liable under § 523(a)(2)(A)?

4. Did the bankruptcy court err by applying former Rule 7008(b) to deny Buckley attorney's fees for the adversary proceeding?

5. Did the bankruptcy court abuse its discretion in awarding Buckley his state court attorney's fees and, if so, did it err by awarding the amount that it did?

6. Did the bankruptcy court abuse its discretion by awarding Buckley interest on the nondischargeable portion of the State Court Judgment and on his state court attorney's fees, and did it further err by awarding interest at the California judgment rate of 10%?

### IV. STANDARDS OF REVIEW

We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. <u>Carrillo v. Su (In re Su)</u>, 290 F.3d 1140, 1142 (9th Cir. 2002). A finding of fact is clearly erroneous if it is illogical, implausible or without support in the record. <u>Retz v. Samson (In re Retz)</u>, 606 F.3d 1189, 1196 (9th Cir. 2010). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." <u>Anderson v. City of Bessemer City</u>, 470 U.S. 564, 574 (1985). When factual findings are based on credibility determinations, we must give even greater deference to the bankruptcy court's findings. <u>Id.</u> at 575.

We review de novo the bankruptcy court's determination that

-14-

1  issue preclusion was available.  <u>Plyam v. Precision Dev., LLC</u>
2  <u>(In re Plyam)</u>, 530 B.R. 456, 461 (9th Cir. BAP 2015).  If issue
3  preclusion was available, we review the bankruptcy court's
4  application of issue preclusion for an abuse of discretion.  <u>Id.</u>

5      The bankruptcy court's factual findings under Civil
6  Rule 52(c) are reviewed for clear error, while its conclusions of
7  law are reviewed de novo.  <u>Kuan v. Lund (In re Lund)</u>, 202 B.R.
8  127, 129 (9th Cir. BAP 1996).

9      We will not disturb a bankruptcy court's award of attorney's
10 fees on appeal "absent an abuse of discretion or an erroneous
11 application of the law."  <u>In re Nucorp Energy, Inc.</u>, 764 F.2d 655,
12 657 (9th Cir. 1985).  We review the bankruptcy court's prejudgment
13 interest award for abuse of discretion.  <u>Simeonoff v. Hiner</u>,
14 249 F.3d 883, 894 (9th Cir. 2001).

15     A bankruptcy court abuses its discretion if it applied the
16 wrong legal standard or its factual findings were clearly
17 erroneous.  <u>TrafficSchool.com, Inc. v. Edriver Inc.</u>, 653 F.3d 820,
18 832 (9th Cir. 2011).

19                          **V. DISCUSSION**

20 **A.    The bankruptcy court did not err by declining to apply issue
          preclusion to the jury's findings of fact.**
21

22     The Bartenwerfers contend the bankruptcy court erred by not
23 giving preclusive effect to the jury's findings that they did not
24 engage in fraudulent conduct by failing to disclose the Subject
25 Defects to Buckley, as the issue of their actual fraud was
26 actually litigated and necessarily decided by the jury in their
27 favor.

28     The doctrine of issue preclusion applies to dischargeability

-15-

actions under § 523(a).  Grogan v. Garner, 498 U.S. 279, 284 n.11 (1991).  Issue preclusion bars relitigation of factual issues that have been adjudicated in a prior action.  Under the principles of "full faith and credit," 28 U.S.C. § 1738, federal courts give prior state-court judgments the same preclusive effect as the courts of the state from which the judgment derived, Cal-Micro, Inc. v. Cantrell (In re Cantrell), 329 F.3d 1119, 1123 (9th Cir. 2003).  Hence, we apply California's doctrine of issue preclusion.

Under California law, the party asserting issue preclusion bears the burden of establishing five threshold requirements: (1) the issue to be precluded from relitigation must be identical to that decided in a former proceeding; (2) the issue must have been actually litigated in the former proceeding; (3) it must have been necessarily decided in the former proceeding; (4) the decision in the former proceeding must be final and on the merits; and (5) the party against whom preclusion is sought must be the same as the party to the former proceeding.  Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001); Lucido v. Super. Ct., 51 Cal. 3d 335, 341 (1990).  Additionally, imposition of issue preclusion must be fair and consistent with sound public policy.  Lucido, 51 Cal. 3d at 343.

The party seeking to apply issue preclusion has the burden of proving that each element is satisfied.  To sustain this burden, a party must introduce a record sufficient to reveal the controlling facts and the exact issues litigated in the prior action.  Tomkow v. Barton (In re Tomkow), 563 B.R. 716, 722 (9th Cir. BAP 2017) (citing Kelly v. Okoye (In re Kelly), 182 B.R. 255, 258 (9th Cir. BAP 1995), aff'd, 100 F.3d 110 (9th Cir. 1996)).  However, the

-16-

entire record of the underlying proceedings need not be produced if the issues can be ascertained from the documents presented. See In re Plyam, 530 B.R. at 470 (to the extent jury findings are clearly and solely based on the relevant elements, they may be sufficient for application of issue preclusion); Johnson v. GlaxoSmithKline, Inc., 166 Cal. App. 4th 1497, 1513 n.9 (2008) (a court **may** refer to the entire record to determine issues decided in earlier case). Any reasonable doubt as to what was decided in the prior action will weigh against applying issue preclusion. In re Tomkow, 563 B.R. at 722 (citing In re Kelly, 182 B.R. at 258).

Neither party disputes that the State Court Judgment was final and on the merits and that the parties in the prior action were the same. Thus, elements (4) and (5) of issue preclusion were met. We now review the remaining three.

**1. The exact issues sought to be precluded were identical to those in the former proceeding.**

To establish a claim under § 523(a)(2)(A), a creditor must show: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of the debtor's statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct. Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000). Concealment of a material fact that a party has a duty to disclose can support nondischargeability of a debt on the grounds of actual fraud.

-17-

1  <u>Apte v. Japra, M.D., F.A.C.C., Inc. (In re Apte)</u>, 96 F.3d 1319,
2  1323-24 (9th Cir. 1996).

3      Similarly, under California law, to prevail on a claim for
4  intentional misrepresentation, the plaintiff must prove:  (1) a
5  misrepresentation; (2) knowledge of the falsity; (3) intent to
6  induce reliance; (4) actual and justifiable reliance; and
7  (5) resulting damage.  <u>Lazar v. Super. Ct.</u>, 12 Cal. 4th 631, 638
8  (1996).  The elements of a claim for negligent misrepresentation
9  are the same except that negligent misrepresentation does not
10  require knowledge of the falsity but instead requires a
11  misrepresentation of fact by a person who has no reasonable
12  grounds for believing it to be true.  Cal. Civ. Code § 1710,
13  subd. 2; <u>West v. JPMorgan Chase Bank, N.A.</u>, 214 Cal. App. 4th 780,
14  792 (2013).

15      The elements of Buckley's § 523(a)(2)(A) claim and his state-
16  court claims for intentional and negligent misrepresentation were
17  identical.  Even though we lack a copy of the state court
18  complaint, it seems clear based on the jury verdict that the issue
19  of the Bartenwerfers' fraudulent intent with respect to their
20  affirmative misrepresentations to Buckley was squarely at issue in
21  the state court action, as it was in the adversary proceeding.

22          **2.    The issue of the Bartenwerfers' fraudulent intent
23                  regarding the Subject Defects was actually litigated in
                    the former proceeding.**

24      An issue is "actually litigated" when both parties presented
25  evidence and witnesses in support of their positions and had the
26  opportunity to present full cases.  <u>Lucido</u>, 51 Cal. 3d at 341.
27  Even without copies of the state court complaint and jury
28  instructions, the issue of the Bartenwerfers' fraudulent intent

-18-

with respect to their misrepresentations or failure to disclose the Subject Defects to Buckley was actually litigated in the state court action, considering that the jury made express findings on that issue.

### 3. It is not clear whether the issue of the Bartenwerfers' fraudulent intent regarding the Subject Defects was necessarily decided.

To conclude that the issue was "necessarily decided," the issue must not have been "entirely unnecessary" to the judgment in the prior proceeding. Id. at 342. As sellers of real estate in California, the Bartenwerfers had a duty to disclose any known facts materially affecting the value or desirability of the Property, when such facts were not known to, nor readily discoverable by, Buckley. Cal. Civ. Code § 1102 et seq.; Calemine v. Samuelson, 171 Cal. App. 4th 153, 161 (2009) ("A real estate seller has both a common law and statutory duty of disclosure."). Nondisclosure is tantamount to a misrepresentation. See Calemine, 171 Cal. App. 4th at 161.

Although the jury found no fraudulent intent by the Bartenwerfers in connection with Buckley's claims for intentional and negligent misrepresentations, it is not clear what level of scienter the jury decided respecting his claim for their failure to disclose information in the sale of the Property. The jury found that the Bartenwerfers "knew or reasonably should have known" of the Subject Defects and "knew or reasonably should have known" that Buckley did not know about them and could not reasonably have discovered them prior to the sale.

For this type of claim, if the Bartenwerfers "knew" of the Subject Defects and failed to disclose them, then failing to

-19-

fulfill their duty of disclosure constitutes actual fraud. Snelson v. Ondulando Highlands Corp., 5 Cal. App. 3d 243, 251 (1970); Lingsch v. Savage, 213 Cal. App. 2d 729, 735-36 (1963). However, the standard of "reasonably should have known" suggests something less than actual fraud; rather, it sounds in negligence. To confuse matters more, the jury awarded Buckley PVD damages of $300,000 under Cal. Civ. Code § 3343,[5] which is a "fraud" damage. On the other hand, of the $400,000 in damages Buckley was initially awarded, the jury awarded him $0 for "intentional fraud." Thus, it is difficult to determine on this record whether a finding of actual fraud was necessary to the judgment. As a result, we are unable to determine conclusively whether the jury found the Bartenwerfers liable on Buckley's failure to disclose claim on the basis of actual fraud or something requiring a lower scienter standard.

As the party seeking to apply issue preclusion to the jury's findings of fact with respect to the Bartenwerfers' fraudulent intent, it was the Bartenwerfers' burden of proving that each element was satisfied. They have not done so. Any reasonable doubt as to what was decided in the prior action weighs against applying issue preclusion. Accordingly, the bankruptcy court did not err by refusing to give preclusive effect to the jury's findings of intent.

---

[5] Cal. Civ. Code § 3343 provides, in relevant part:

(a) One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction[.]

-20-

**B.   The bankruptcy court erred by not making a finding as to Mrs. Bartenwerfer's intent in denying her motion for judgment on partial findings.**

The Bartenwerfers contend the bankruptcy court erred in denying Mrs. Bartenwerfer's motion for judgment on partial findings, because there was no evidence in the record that she "knew or should have known" of Mr. Bartenwerfer's alleged fraud. While there may or may not have been sufficient evidence in the record of Mrs. Bartenwerfer's actual knowledge, we agree that the court needed to make a finding on her intent when ruling on the Civil Rule 52(c) motion.

When deciding a motion under Civil Rule 52(c),[6] made applicable here by Rule 7052, the bankruptcy court is "not required to draw any inferences in favor of the non-moving party; rather, the [bankruptcy] court may make findings in accordance with its own view of the evidence." Ritchie v. United States, 451 F.3d 1019, 1023 (9th Cir. 2006).

Recognizing that a marital relationship by itself is insufficient to impute the fraud of one spouse to the other, the bankruptcy court determined that a business or agency relationship existed between the Bartenwerfers; thus, Mr. Bartenwerfer's fraud could be imputed to Mrs. Bartenwerfer.

A California partnership is "an association of two or more

---

[6]  Civil Rule 52(c), applicable here by Rule 7052, provides in relevant part:

Judgment on Partial Findings.  If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

-21-

persons to carry on as coowners a business for profit . . . ."
Cal. Corp. Code § 16101(9) (2013). Whether or not parties have
entered into a partnership/agency relationship rather than some
other form of relationship is a question of fact and depends on
whether they intended to share in the profits, losses and the
management and control of the enterprise. Tsurukawa v. Nikon
Precision, Inc. (In re Tsurukawa), 287 B.R. 515, 521 (9th Cir. BAP
2002).

    We agree with the bankruptcy court's agency finding.
Mrs. Bartenwerfer's partnership/agency relationship with
Mr. Bartenwerfer was established by not only her co-ownership of
the Property, which is a factor tending to establish partnership,
id., but also because she signed the TDS and sales contract and
she stood to benefit from the successful completion of the project
and sale of the Property. That she participated little in the
project and delegated authority to Mr. Bartenwerfer to manage it
does not defeat the forming of a partnership. A partnership can
exist as long as the parties have the right to manage the
business, even though in practice one partner relinquishes the
day-to-day management to the other partner. Id.

    However, the court erred by imputing Mr. Bartenwerfer's
fraudulent intent to Mrs. Bartenwerfer on the basis of agency
alone. To deny Mrs. Bartenwerfer's Civil Rule 52(c) motion, the
court had to also find that she "knew or had reason to know" of
Mr. Bartenwerfer's fraudulent omissions. Sachan v. Huh
(In re Huh), 506 B.R. 257, 271-72 (9th Cir. BAP 2014) (en banc).
The court made no such finding. Accordingly, we REMAND this issue
for further findings as to Mrs. Bartenwerfer's actual knowledge.

-22-

In addition, because the bankruptcy court appears to have imposed judgment against Mrs. Bartenwerfer solely on the basis of her agency relationship with Mr. Bartenwerfer, we VACATE the portion of the Second Amended 523 Judgment determining that Buckley's debt was nondischargeable under § 523(a)(2)(A) as to Mrs. Bartenwerfer.

**C.  Sufficient evidence existed for the bankruptcy court to find that Mr. Bartenwerfer knowingly and intentionally concealed the Subject Defects from Buckley.**

The only issue for the bankruptcy court trial was whether the Bartenwerfers acted with the requisite knowledge and intent to support a finding of fraud by concealment for purposes of § 523(a)(2)(A). The Bartenwerfers argue that the court's findings of their intent to conceal the Subject Defects are erroneous and not supported by the record.

Although we concluded above that the findings as to Mrs. Bartenwerfer's intent are inadequate, we believe ample evidence existed in the record for the court to find that Mr. Bartenwerfer knowingly and intentionally concealed the Subject Defects from Buckley for purposes of § 523(a)(2)(A).

**1.  Water leaks**

The bankruptcy court found that Mr. Bartenwerfer intentionally concealed the Property's water leaks of which he had actual knowledge. The TDS specifically asked if there were "any past or present water leaks or water intrusions," to which the Bartenwerfers answered "No." At trial, Mr. Bartenwerfer admitted that he paid a roofing service to repair leaks, specifically a leak above the master bedroom closet near the deck. The roofing repair service's bid to perform the repairs was dated just one

-23-

month before the Bartenwerfers completed and signed the TDS representing that there were no past or present leaks.  Shortly after the sale, Buckley discovered a leak in the master bedroom ceiling below the deck and other leaks.

Mr. Bartenwerfer testified that he did not think he had to disclose the leaks to Buckley or his own real estate agent because the issue had been corrected before construction was complete and it "didn't feel like a big deal."  The bankruptcy court did not find credible Mr. Bartenwerfer's testimony that he had "made a simple mistake" by not disclosing the known leaks, especially when the master bedroom leak was repaired so close in time to the TDS and at the very end of construction.

The Bartenwerfers argue that the evidence did not support a finding that Mr. Bartenwerfer intentionally failed to disclose water leaks.  The bankruptcy court did not find credible Mr. Bartenwerfer's testimony that he did not intend to deceive Buckley by failing to disclose the water leaks.  Because the court's finding regarding Mr. Bartenwerfer's intent about the water leaks is based on a credibility determination, we must give that finding greater deference.  <u>In re Retz</u>, 606 F.3d at 1196. More importantly, the court did not make this finding in a vacuum. It found that, based on this and other nondisclosures, Mr. Bartenwerfer had the requisite knowledge and intent to deceive Buckley with respect to the nondisclosure of the leaks.  We perceive no clear error in that finding.

**2.  Status of permits**

In the TDS, the Bartenwerfers disclosed an open building permit related to the kitchen, but did not disclose numerous other

-24-

open permits (ten to be exact), subsequent permit violations and inspection failures.  Mr. Bartenwerfer admitted that, at the time he signed the TDS in November 2007, he was aware that electrical and plumbing work had not been approved by an inspector, that the permits had not received final sign off, and that a lack of a sign off is something a buyer would want to know.  He further admitted that he did not disclose to Buckley or his real estate agent the Notice of Violation, dated January 31, 2008, after the parties entered into the sales contract, which stated that all permits had expired and no special inspection reports had been submitted.  The Bartenwerfers' agent testified that the Notice of Violation would have required the TDS to be amended.

Mr. Bartenwerfer also did not disclose to Buckley or to their own agent that on February 19, 2008, the Property had "failed yet another electrical inspection."  Other evidence showed that Mr. Bartenwerfer knew that the electrical permit was still not closed out by March 13, 2008 — the day before the sale closed.  The Bartenwerfers also did not provide all permits to Buckley until after the sale had closed.

The bankruptcy court found Mr. Bartenwerfer's testimony regarding the status of permits not credible and ultimately found that he omitted information about the status of the permits, the Notice of Violation and failed inspections up through the time of the closing, with the intent to deceive Buckley.  The TDS would have led a reasonable person to believe that the only outstanding permit issues related to the kitchen, when in fact there were ten outstanding permits that had continuing issues up to the time of the closing in March 2008 and beyond, including their expiration

-25-

in January 2008.  Accordingly, the court found that
Mr. Bartenwerfer had the requisite intent to deceive Buckley with
respect to nondisclosure of the status of permits.

The Bartenwerfers contend the bankruptcy court erred in
finding that Mr. Bartenwerfer knowingly and fraudulently failed to
disclose the status of the permits, given Addendum 4 to the sales
contract, wherein the parties acknowledged Mr. Bartenwerfer's need
to obtain sign off on all outstanding permits for the Property.
In other words, the Bartenwerfers argue that something that was
disclosed cannot have been omitted with fraudulent intent.

Although the parties acknowledged that a final sign off on
any permits was necessary, the evidence showed that Buckley was
not aware of the extent of the open permit issues at the time he
entered into the sales contract or by the time of the closing.  He
testified that he was told only a "few minor items" were needed to
finalize any permits, which included some electric work and a
handrail installation.  Given the court's credibility finding and
the evidence in the record, we cannot say that the bankruptcy
court made an erroneous finding as to Mr. Bartenwerfer's intent to
deceive Buckley by concealing the status of the permits.

The Bartenwerfers argue that Buckley failed to establish they
had a duty to provide him with specific updates of inspections or
with the permit cards prior to closing, but the jury necessarily
found that they had a duty to disclose issues involving the
permits, when the jury awarded Buckley damages associated with the
Bartenwerfers' failure to disclose them.

**3.   Windows**

In the TDS, the Bartenwerfers answered "No" to whether they

-26-

were aware of "any significant defects/malfunctions" in the windows.  They also did not disclose any window problems in a supplemental disclosure.

The primary evidence with respect to the window defects was the testimony of Mr. Barbic, a Pella Windows technician, who testified at the state court trial.  In February 2008, Mr. Barbic made a site visit to the Property and noted that several windows had been installed "out of square" and therefore did not function properly.  Mr. Barbic testified that he had advised either Mr. Bartenwerfer or his brother Dale of the problem and that it was an installation error.

Mr. Bartenwerfer denied having any conversations with Mr. Barbic, or anyone at Pella Windows, about the windows being "out of square" and needing to be reinstalled.  He did recall being told that a door was out of square and that his brother Dale, who is not a contractor and has no education, training or expertise in California building codes, told him that the windows were working properly.

The bankruptcy court did not find credible Mr. Bartenwerfer's testimony that he was unaware that the windows had been installed "out of square" because:  (a) he had a conversation with Dale about whether the windows were working properly; (b) he testified that he believed the window problem was a manufacturing defect; and (c) Mr. Barbic's testimony as to what he told Mr. Bartenwerfer or Dale about the windows being out of square was so detailed and specific and therefore, reliable and credible.

The Bartenwerfers argue that the bankruptcy court's reliance on Mr. Barbic's testimony was misplaced, because it is unclear if

-27-

he spoke to Mr. Bartenwerfer or his brother, Dale. Mr. Barbic admitted he was unsure as to which man he told the windows were out of square. However, the bankruptcy court inferred that, even if he spoke to Dale about this issue, then Mr. Bartenwerfer likely was aware of it too based on his admitted conversations with Dale about the functionality of the windows. This was not an illogical or implausible inference. In any event, the bankruptcy court found that, even if Mr. Bartenwerfer believed the window and door problems to be manufacturing defects rather than installation problems, he should have disclosed these defects to Buckley. Pella Windows had been out to the Property as early as January 2, 2008, long before Buckley delivered his list of repairs to be made, which strongly suggested Mr. Bartenwerfer was aware of the door and window problems before Buckley discovered them.

Accordingly, we find no clear error in the bankruptcy court's finding that Mr. Bartenwerfer had the requisite knowledge and intent to deceive Buckley with respect to nondisclosure of the window defects.

### 4. Fire escape

The Bartenwerfers also did not disclose in the TDS or otherwise any information about a fire escape. Apparently, many versions of design plans were done for the Property, but the final version did not include a fire escape. In October 2008, Mr. Bartenwerfer received an email from a contractor assisting the Bartenwerfers with their permit issues, advising Mr. Bartenwerfer not to give Buckley all versions of the plans because Buckley might notice the missing fire escape, which could prevent a final sign off on the Certificate of Final Completion. Mr. Bartenwerfer

-28-

testified that a fire escape was not required.

The bankruptcy court found that, contrary to
Mr. Bartenwerfer's testimony suggesting he had no duty to disclose
the missing fire escape because it was not included in the final
plans, the jury had found the omission of the lack of a fire
escape material and that it caused harm to Buckley.  Therefore,
based on the email exchange between Mr. Bartenwerfer and his
contractor, the Bartenwerfers' apparent duty to disclose, and that
Mr. Bartenwerfer did not initially provide Buckley with a complete
set of drawings and permits, the bankruptcy court found that
Mr. Bartenwerfer had the requisite knowledge and intent to deceive
Buckley with respect to nondisclosure of the missing fire escape.

The Bartenwerfers dispute the bankruptcy court's finding that
they had a duty to disclose the requirement that a fire escape be
installed, when there was no evidence that any such requirement
existed.  As with the permit issues, because the jury awarded
Buckley damages for the missing fire escape, it was reasonable for
the bankruptcy court to conclude that a fire escape was required
and that this fact should have been disclosed.  In addition, it is
clear that Mr. Bartenwerfer had an ulterior motive to withhold
plans containing a fire escape, because he was afraid that Buckley
would scrutinize the plans and thus jeopardize the $25,000
holdback the Bartenwerfers were set to receive if the Property
obtained a Certificate of Final Completion.  Accordingly, we find
no clear error here.

**D.    The bankruptcy court did not err by applying former
        Rule 7008(b) to deny Buckley his adversary attorney's fees.**

Buckley cross-appeals the bankruptcy court's ruling that he

-29-

1  was not entitled to attorney's fees incurred for prosecuting the
2  dischargeability action against the Bartenwerfers because he
3  failed to plead a claim for such fees as required by the former
4  Rule 7008(b).  He argues that the bankruptcy court erred by not
5  applying Amended Rule 7008(b), in effect at the time of trial,
6  which no longer requires a plaintiff to plead separately adversary
7  attorney's fees.

8      There is no general right to recover attorney's fees under
9  the Code.  <u>Renfrow v. Draper</u>, 232 F.3d 688, 693 (9th Cir. 2000).
10 Buckley's dischargeability complaint averred a claim for relief
11 under § 523(a)(2)(A), which does not provide for an award of
12 attorney's fees.  Former Rule 7008(b), which applied when Buckley
13 filed his dischargeability complaint, stated:  "A request for an
14 award of attorney's fees shall be pleaded as a claim in a
15 complaint, cross-claim, third-party complaint, answer, or reply as
16 may be appropriate."  A claim for adversary attorney's fees is now
17 made by post-trial motion.  Rule 7054(b)(2).

18     We conclude that the bankruptcy court did not err by applying
19 former Rule 7008(b) to Buckley's adversary fees, the rule in
20 effect at the time he filed his dischargeability complaint, and
21 Buckley has not persuaded us that a different rule should have
22 been applied.

23 **E.  The bankruptcy court abused its discretion by not determining**
   **what portion of Buckley's state court attorney's fees were**
24 **attributable to Mr. Bartenwerfer's fraud.**

25     The Bartenwerfers raise a variety of arguments respecting the
26 bankruptcy court's decision to award Buckley his state court
27 attorney's fees.  We address each in turn.

28     They first argue that Buckley's allegation for his state

-30-

court attorney's fees in the dischargeability complaint failed to meet the heightened pleading standard required by Civil Rule 9(g), applicable to adversary proceedings by Rule 7009. The Bartenwerfers contend that Buckley's damages for his state court attorney's fees were an item of "special damages," and failure to plead them with specificity bars them. The Bartenwerfers acknowledge that the Ninth Circuit has not yet ruled on whether attorney's fees are special damages that must be pleaded with the specificity required by Civil Rule 9(g), but they cite several cases, including other circuit cases, which have held that they are. The Bartenwerfers rely particularly on Garcia v. Odom (In re Odom), 113 B.R. 623 (Bankr. C.D. Cal. 1990).

Even if Civil Rule 9(g) applied to Buckley's state court attorney's fees, which we are not deciding, we conclude that Buckley pleaded the amount he was seeking with sufficient specificity to satisfy Civil Rule 9(g); he specifically requested $378,491. See Charlie Y., Inc. v. Carey (In re Carey), 446 B.R. 384, 394 (9th Cir. BAP 2011) (noting that what Odom and similar authorities say about claims for attorney's fees as special damages is that the claimant can receive no more than it pleads for specifically).

We also reject the Bartenwerfers' argument that Buckley's claim for state court attorney's fees failed to meet the ordinary pleading standard of Civil Rule 8, applicable here by Rule 7008(b). Buckley pleaded his claim for state court attorney's fees in Paragraphs 4 and 13 of the complaint. He also realleged the first 4 paragraphs of the complaint in Paragraph 5. This demand was specific enough to satisfy Rule 7008(b). Id. at

-31-

392, 394 (claim for attorney's fees adequately pleaded for purposes of Rule 7008(b), because it was stated in the body of the complaint, not merely in the prayer, and included supporting factual allegations for basis for the claim). Accordingly, the bankruptcy court did not err in determining that Buckley's claim for his state court attorney's fees complied with Rule 7008(b).

The Bartenwerfers next argue that the bankruptcy court erred by not requiring Buckley to apportion his state court attorney's fees between the single state-court cause of action ruled nondischargeable — the failure to disclose information in the sale of real estate — and the four additional causes of action (two of which the Bartenwerfers prevailed upon) that were not the subject of litigation before the bankruptcy court. It is undisputed that attorney's fees for either tort or contract actions were available to the prevailing party under the sales contract. For the reasons stated below, we VACATE the June 23 Order, the Final Fee Order and the Second Amended 523 Judgment to the extent they determined that Buckley's state court attorney's fees were nondischargeable and REMAND this issue for further determination by the bankruptcy court.

In the June 23 Order, the bankruptcy court ruled that Buckley was not required to apportion his fees because they were provided for in the parties' agreement, which Buckley entered into as a result of the Bartenwerfers' fraudulent conduct. Thus, because the nondischargeable claim for fraud in this case arose entirely out of the contract without distinction, the court determined that Buckley's state court attorney's fees did not have to be apportioned and were nondischargeable as well. That might be true

-32-

had the state court liquidated the amount of the fees and specifically awarded them as part of any damages for fraud. <u>See Younie v. Gonya (In re Younie)</u>, 211 B.R. 367, 377 (9th Cir. BAP 1997). But that is not what happened here.

Because of the Bartenwerfers' bankruptcy filing, the state court never liquidated the amount of Buckley's attorney's fees or determined their reasonableness. Thus, it was up to the bankruptcy court to liquidate them and to determine what portion, if any, flowed from Mr. Bartenwerfer's fraudulent conduct.[7] If the jury had rendered a fraud judgment, then Buckley's state court attorney's fees would also be nondischargeable. <u>Cohen v. de la Cruz</u>, 523 U.S. 213, 218-19 (1998). However, as we noted above, we are unable to determine if the State Court Judgment was based on fraud, breach of contract, negligence or some combination thereof. Without a copy of the state court complaint and jury instructions, the bankruptcy court was also unable to make this determination.

Just because the bankruptcy court found fraud by Mr. Bartenwerfer does not necessarily mean that the entire amount of Buckley's state court attorney's fees was nondischargeable; only those fees attributable to the fraud are nondischargeable under § 523(a)(2)(A). <u>Id.</u> at 223 (compensation for fraud losses include "attorney's fees and costs of suit associated with

---

[7] Ninth Circuit authority has held that the bankruptcy court has the power to award state court attorney's fees when a fee application there was interrupted by the bankruptcy stay. <u>Renfrow</u>, 232 F.3d at 694-95, citing with favor, <u>Florida v. Ticor Title Ins. Co. of Cal. (In re Florida)</u>, 164 B.R. 636, 640 (9th Cir. BAP 1994) ("[A] bankruptcy court has jurisdiction to liquidate a claim for attorney's fees [in a state court action] intercepted by [an] automatic stay and can determine the debt nondischargeable on a motion for summary judgment.").

-33-

1  **establishing fraud"**) (emphasis added).  See also Hensley v.

2  Eckerhart, 461 U.S. 424, 440 (1983) (the extent of a plaintiff's

3  success is a crucial factor in determining the proper amount of an

4  award of attorney's fees, and where the plaintiff has failed to

5  prevail on a claim that is distinct in all respects from his

6  successful claims, the hours spent on the unsuccessful claim

7  should be excluded in considering the amount of a reasonable fee);

8  Jennen v. Hunter (In re Hunter), 771 F.2d 1126, 1131 (8th Cir.

9  1985) (ancillary attorney's fee award is subject to apportionment

10 between the dischargeable and nondischargeable parts of the

11 underlying debt); Clear Sky Props., LLC v. Roussel

12 (In re Roussel), 536 B.R. 254, 263 (Bankr. E.D. Ark. 2015)

13 (collecting cases holding that the bankruptcy court must apportion

14 an attorney's fee award into dischargeable and nondischargeable

15 components as dictated by the underlying debt).

16       Upon remand, we instruct the bankruptcy court to reopen the

17 record to determine what amount of Buckley's state court

18 attorney's fees are attributable to Mr. Bartenwerfer's fraud, if

19 any.  Because we are remanding the issue of Buckley's state court

20 attorney's fees, we do not address the Bartenwerfers' arguments

21 respecting the court's determinations about the reasonableness of

22 the fees or whether Buckley met his burden of proof.  The

23 Bartenwerfers will get another chance to address those issues on

24 remand.

25 **F.    The bankruptcy court did not abuse its discretion by awarding**
   **Buckley interest on the nondischargeable portion of the State**
26 **Court Judgment and on his state court attorney's fees, and it**
   **did not err by awarding interest at the California judgment**
27 **rate of 10%.**

28       The Bartenwerfers raise a number of arguments with respect to

-34-

the interest awarded to Buckley.

First, they contend Buckley waived his claim for interest by failing to raise it at trial. Buckley requested "interest accrued at the legal rate" on the nondischargeable portion of the State Court Judgment in his dischargeability complaint. Although he did not raise the issue at trial, Buckley raised it in his Fee Motion. In their opposition to the Fee Motion, the Bartenwerfers contended that Buckley waived his right to his state court attorney's fees for failing to raise them at trial; they did not argue that he had waived his right to interest on the nondischargeable portion of the State Court Judgment for failing to do the same. The matter of interest on the nondischargeable portion of the State Court Judgment was discussed at the June 16 hearing on Buckley's Fee Motion. Counsel for the Bartenwerfers made no mention of Buckley waiving his right to interest.

The bankruptcy court then reopened the record and ordered further briefing on whether Buckley was entitled to interest on the nondischargeable portion of the State Court Judgment. In their supplemental brief, the Bartenwerfers argued that Buckley should not be awarded interest because he failed to plead it in his dischargeability complaint. When the court noted at the subsequent hearing that their contention was wrong, that Buckley had prayed for interest in his complaint, counsel for the Bartenwerfers conceded that they "missed that" and dropped the issue.

We fail to see where the Bartenwerfers argued before the bankruptcy court that Buckley waived his right to interest by neglecting to raise it at trial; thus, this argument has been

-35-

waived.  See United States v. Lara, 815 F.3d 605, 613 (9th Cir.
2016) (not making argument before trial court fails to preserve
argument for appeal and argument is deemed waived).  To the extent
they argue that Buckley waived his right to interest for failing
to plead it in his complaint, they dropped that argument.

Next, the Bartenwerfers contend the bankruptcy court erred by
awarding interest on the nondischargeable portion of the State
Court Judgment at California's legal rate.  They argue that the
only final judgment entered was upon a single federal cause of
action, namely § 523(a)(2)(A), which was tried in the bankruptcy
court; therefore, the federal rate applies.

Where a debt that is found to be nondischargeable arose under
state law, "the award of prejudgment interest on that debt is also
governed by state law." Otto v. Niles (In re Niles), 106 F.3d
1456, 1463 (9th Cir. 1997); Oney v. Weinberg (In re Weinberg),
410 B.R. 19, 37 (9th Cir. BAP 2009).  Under California law, the
award of prejudgment interest "is a matter of right where there is
a vested right to recover 'damages certain' as of a particular
day." In re Niles, 106 F.3d at 1463 (citing Cal. Civ. Code
§ 3287(a)).  The statute "looks to the certainty of the damages
suffered by the plaintiff, rather than to a defendant's ultimate
liability, in determining whether prejudgment interest is
mandated." Wisper Corp. N.V. v. Cal. Commerce Bank, 49 Cal. App.
4th 948, 958 (1996).  Similarly, interest at the state's judgment
interest rate continues to accrue postpetition on nondischargeable
debts.  Shoen v. Shoen (In re Shoen), 176 F.3d 1150, 1166 (9th
Cir. 1999)(citing Bruning v. United States, 376 U.S. 358, 360
(1964)).

-36-

While Buckley prevailed in the adversary proceeding on his § 523(a)(2)(A) claim, the underlying debt arose from failure to disclose information in the sale of real estate subject to a contract created under state law. Therefore, the nondischargeable debt arose under state law. In addition, the State Court Judgment liquidated Buckley's damages, including interest, even though the state court had not yet liquidated the amount of attorney's fees. In short, Buckley's damages were certain. Accordingly, the bankruptcy court did not abuse its discretion by awarding prejudgment interest on the nondischargeable portion of the State Court Judgment at the California rate of 10%.

The bankruptcy court also did not abuse its discretion in awarding Buckley interest on his state court attorney's fees as a nondischargeable debt, even if it turns out that no such fees should have been or will be awarded. The court ultimately agreed with Buckley that, under California law, once costs are liquidated they are added to the principal amount of the judgment and the entire amount then bears interest at the California statutory rate. Although not cited, we presume the court relied on Lucky, cited in Buckley's reconsideration motion, for its decision.

The Lucky court explained that a prevailing party in California can recover certain costs incurred in litigation, which may include attorney fees if authorized by contract or statute. 185 Cal. App. 4th at 137. Where costs are established by the judgment, but the amount of the award is ascertained at a later time, the clerk enters the costs on the judgment after the amount is determined; thus, the amount of the cost award is incorporated into the judgment. Id. Interest at 10% per annum accrues on the

-37-

unpaid principal amount of the judgment, including the cost award, as of the date of judgment entry. _Id._ at 137-38. Therefore, interest ordinarily begins to accrue on the prejudgment cost portion of the judgment at the same time it begins to accrue on all other monetary portions of the judgment — upon entry of judgment. _Id._ at 138.

Thus, Buckley's attorney's fee award, once ascertained, would be added to the State Court Judgment and interest at the California rate of 10% would accrue thereon as though it were included in the judgment from the day of entry. Accordingly, the bankruptcy court did not err by determining that Buckley would be entitled to interest on his state court attorney's fees.

### VI. CONCLUSION

For the foregoing reasons, we AFFIRM, in part, and VACATE and REMAND, in part.

-38-