

**Signed and Filed: July 1, 2019**

_____
**HANNAH L. BLUMENSTIEL**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | ) Case No. 13-30827 HLB |
| | ) |
| DAVID WILLIAM BARTENWERFER and KATE MARIE BARTENWERFER, | ) Chapter 7 |
| | ) |
| Debtors. | ) |
| | ) |
| KIERAN BUCKLEY, | ) Adv. Proc. No. 13-03185 HLB |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| DAVID WILLIAM BARTENWERFER and KATE MARIE BARTENWERFER, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM DECISION RE APPORTIONMENT OF ATTORNEYS' FEES**

On December 22, 2017, the Bankruptcy Appellate Panel of the Ninth Circuit (the "BAP") issued a decision (Dkt. 179; the "BAP Decision") that, among other things, vacated this court's June 23, 2016 initial order with respect to fees (Dkt. 95; the "Initial Fee Order"); September 2, 2016 final order with respect to fees (Dkt. 108; the "Final Fee Order"); and Second Amended Judgment (Dkt. 143) to the extent they determined that Plaintiff Kieran Buckley's state court attorneys' fees were non-dischargeable. The BAP remanded to this court the question what amount of Mr. Buckley's attorneys' fees might be attributable to

-1-

1   Defendant David William Bartenwerfer's fraud (the "<u>Apportionment</u>

2   <u>Issue</u>").  Following remand, the court received additional

3   briefing and evidence on the Apportionment Issue (Dkts.  188,

4   190, 193, 224, 225, 248, & 249) and took the matter under

5   advisement.

6      This memorandum decision constitutes the court's findings of

7   facts and conclusions of law as required by Rule 52(a)(1) of the

8   Federal Rules of Civil Procedure (the "<u>Civil Rules</u>"), which

9   applies in this proceeding pursuant to Rule 7052 of the Federal

10   Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

11   **I.    JURISDICTION**

12      This proceeding requires a determination of the extent to

13   which certain attorneys' fees may be apportioned to a non-

14   dischargeable debt and constitutes a core proceeding in which

15   this court may enter a final judgment.  [28 U.S.C. § 1334; 28

16   U.S.C. §§ 157(a) & (b)(2)(I); General Order 24 of the United

17   States District Court for the Northern District of California.]

18   In addition, the parties have consented to entry of a final

19   judgment by this court.  <u>See</u> <u>Wellness Int'l Network Ltd. v.</u>

20   <u>Sharif</u>, 135 S.Ct. 1932, 1949 (2015) (holding that "Article III

21   permits bankruptcy courts to decide [statutorily core but

22   constitutionally non-core] claims submitted to them by consent").

23

24

25

26

27

28

## II. BACKGROUND[1]

### a. The Property

David and Kate Bartenwerfer bought and extensively remodeled a home located at 549 28th Street, San Francisco, California (the "Property"), which they subsequently sold to Mr. Buckley. On November 11, 2007, prior to the sale, the Bartenwerfers signed a Real Estate Transfer Disclosure Statement, as well as a supplement thereto (the "TDS") in which they certified that the information therein was true and correct to the best of their knowledge as of that date. [Plaintiff's Trial[2] Ex. 2 at p. 3.] In the TDS, the Bartenwerfers stated that they answered the questions therein "in an effort to fully disclose all material facts relating to the Property and hereby certify that the information provided is true and correct to the best of [their] knowledge." [Id. at p. 7.]

In the TDS, the Bartenwerfers represented that they were not "aware of any significant defects/malfunctions in any of the following": interior walls, ceilings, exterior walls, insulation, roof(s), windows, doors, foundation, slab(s), driveways, sidewalks, walls/fences, electrical systems, plumbing/sewer/septic, or other structural components. [Id. at p. 3.] The Bartenwerfers further represented that they were not aware of any "[r]oom additions, structural modifications, or other alterations or repairs made without necessary permits" or

---

[1] Unless otherwise indicated, the background is derived from this court's Memorandum Decision dated April 1, 2019 (Dkt. 69) and the BAP Decision.

[2] Trial held before this court on January 19, 2016 and January 22, 2016.

"not in compliance with building codes[.]" [Id.] The
Bartenwerfers also represented that there were no "past or
present leaks or water intrusion from or through the roof,
skylights, windows, siding, basement, foundation, or any other
source[.]" [Id. at p. 6.] Finally, the TDS required disclosure
of any other facts that "may affect the value or desirability of
the Property, now or in the future," whether known or suspected.
[Id. at p. 7.] The Bartenwerfers did not make any such
disclosures.

The parties signed the sale contract with respect to the
Property on January 23, 2008. In the sale contract, the
Bartenwerfers represented that they "ha[d] no knowledge or notice
that the Property has any material defects other than as
disclosed by the [Bartenwerfers] in the [TDS] or other writing
before Acceptance or as soon thereafter as practicable." The
Bartenwerfers made no additional written disclosures beyond what
was contained in the TDS and sale contract. The parties executed
several addenda to the sale contract, including a provision for
certain repairs requested by Mr. Buckley and a holdback of funds
to address outstanding permit and heating issues.

    **b.**   **The State Court Action**

After the sale closed in March 2008, Mr. Buckley discovered
undisclosed defects. Mr. Buckley and the Bartenwerfers were
unable to resolve their disputes with respect to those defects.
Accordingly, on June 24, 2009, Mr. Buckley commenced an action
against the Bartenwerfers and entities that performed work on the

4

Property (the "Contractors") in the San Francisco Superior Court (the "State Court").[3]

On October 1, 2009, Mr. Buckley filed a First Amended Complaint in the State Court Action. [Request to Take Judicial Notice in Support of Defendants' Brief re Apportionment of State Court Attorneys' Fees (Dkt. 225; the "Bartenwerfers' RJN"), Ex. A (the "State Court Complaint").] The State Court Complaint asserted eight causes of action: (1) strict liability; (2) breach of express warranty; (3) breach of implied warranty; (4) negligence; (5) breach of contract; (6) negligent misrepresentation; (7) fraud/deceit; and (8) rescission. [State Court Complaint at pp. 4-13.] Each of the causes of action were asserted against only the Bartenwerfers, except for the Fourth Cause of Action for negligence which was asserted against the Bartenwerfers and the Contractors. [Id.]

The allegations that formed the basis of all eight causes of action are found in paragraphs 9 through 14 of the State Court Complaint. Each cause of action expressly incorporated these paragraphs and the facts alleged therein. [Id. at ¶¶ 9-14, 15, 21, 25, 27, 32, 37, & 41.] In sum, the State Court Complaint alleged that the Bartenwerfers were in the business of substantially remodeling and selling residences to the general public (¶ 9); the Bartenwerfers failed to design and construct the Property in accordance with proper and approved techniques, and failed to hire and adequately manage capable contractors, subcontractors, and material suppliers (¶ 10); the Bartenwerfers

---

[3] Buckley v. Bartenwerfer, et al., Case No. CGC-09-489793 (the "State Court Action").

failed to perform work at the Property in compliance with building standards established by the California Civil Code (¶ 11); after the Property was transferred to Mr. Buckley, he discovered numerous defects (the "Alleged Defects") (¶ 12); the Property may have additional as yet undiscovered defects (¶ 13); and, as a result of the Bartenwerfers' remodeling, construction, and sale of the Property in a defective condition, Mr. Buckley was damaged (¶ 14).

The Alleged Defects included:

- Defects in fire installations, including but not limited to master bedroom fireplace missing the factory provided brick surround.

- Defects in the flooring, including but not limited to garden level hardwood floor buckling throughout bedroom and improper moisture levels and related mold issues.

- Defects in plumbing, including but not limited to lower toilet backing-up, improperly installed sewage ejection system/sump pump systems, toilet runs intermittently at all times, reversal of hot and cold water, deficiencies in water supplies and water heating, toilet flush handles improperly installed.

- Defects in mechanical systems, including but not limited to improperly installed and kinked air ducting, and defective heating/airflow systems.

- Defects in installation of doors and windows, including but not limited to doors jamming and/or not latching, windows not opening. Windows must be removed and reinstalled.

- Defects in installation of appliances, including but
  not limited to dishwasher does not work, dryer vents
  not up to code.
- Defects in installation of telephone and cable lines.
- Defects in railings and decking, including but not
  limited to loose deck rail spindles.
- Failures to obtain permits or obtain final sign off on
  permits for work performed at the Property.
- Defects in gutters, improperly installed gutters and
  downspouts.
- Headroom issues on stairs.
- Loose installation and debris in crawlspace.

[Id. at ¶ 12.]

While the Second through Eighth Causes of Action set forth additional allegations aimed at pleading the specific elements of those claims, they each expressly incorporated and relied on the factual allegations set forth in paragraphs 9 through 14. For example, the Seventh Cause of Action for fraud/deceit alleged that the Bartenwerfers made intentional misrepresentations or omissions with respect to the Alleged Defects, and that Mr. Buckley relied on such misrepresentations and omissions and was harmed as a result. [Id. at ¶¶ 37-40.]

On October 23, 2009, the Bartenwerfers filed an answer to the State Court Complaint in which they asserted a general denial plus a variety of affirmative defenses, including fault of a third party (Eleventh Affirmative Defense); indemnity by other named defendants (Thirteenth Affirmative Defense); and damages caused by another party, wear or tear (Sixteenth Affirmative

Defense). [Bartenwerfers' RJN, Ex. B (the "Bartenwerfers' Answer").] On the same day, the Bartenwerfers filed a cross-complaint against Mr. Buckley and the Contractors.[4] [Bartenwerfers' RJN, Ex. C (the "Bartenwerfers' Cross-Complaint").] In the Bartenwerfers' Cross-Complaint, the Bartenwerfers asserted breach of contract claims against Mr. Buckley and the Contractors, and implied indemnity and contribution claims against the Contractors. [Bartenwerfers' Cross-Complaint at pp. 5-7.]

In answering the State Court Complaint and the Bartenwerfers' Cross-Complaint, certain of the Contractors asserted affirmative defenses of indemnification and contributory or comparative negligence of the other parties to the action. [See Bartenwerfers' RJN, Exs. D, H, & I.] And, at least one Contractor filed its own cross-complaint against Mr. Buckley, the Bartenwerfers, and the other Contractors by which it asserted claims for equitable indemnity, negligence, and contribution. [Bartenwerfers' RJN, Ex. G.][5]

Over the course of the next three years, the parties engaged in extensive discovery and motion practice in preparation for trial. [See generally Request for Judicial Notice in Support of Prevailing Party Attorneys' Fees & Costs and Interest (Dkt. 100),

---

[4] The Bartenwerfers' Cross-Complaint names additional Contractors beyond those named as defendants in the State Court Complaint. For purposes of this decision, all such parties will be referred to as the "Contractors."

[5] The Bartenwerfers submitted a number of State Court Action pleadings with the Bartenwerfers' RJN, but it is not clear to the court that the Bartenwerfers included all answers and cross-complaints filed in the State Court Action. The court speaks only to those pleadings submitted to it by the parties in this adversary proceeding.

Ex. 1 (State Court Action docket).]  Counsel to Mr. Buckley in
the State Court Action, Ms. Janet Brayer, explained that the
parties did not parse discovery among Mr. Buckley's claims
against the Bartenwerfers and his claims against the Contractors.
[Declaration of Matthew J. Olson (Dkt. 224-1; the "Olson Decl."),
Ex. R (Transcript of Brayer Deposition ("Brayer Tr.")), 14:11-
21.]  Ms. Brayer further explained that the nature of the
indemnity claims by the Bartenwerfers and the Contractors
resulted in finger pointing as to who did what and who knew what
– issues that went to the heart of Mr. Bartenwerfer's defense
that he was not responsible for, and had no knowledge of, the
Alleged Defects.  [Id. at pp. 48:16-50:3.]

After a 19-day trial, detailed instructions were submitted
to the jury.  [Bartenwerfers' RJN, Ex. K (the "Jury
Instructions").]  The Jury Instructions reflected that Mr.
Buckley made the following claims against the Bartenwerfers:
(1) breach of contract; (2) negligent misrepresentation; (3)
intentional fraud or deceit; (4) negligent or willful failure to
disclose information required to be disclosed by the TDS; and (5)
negligence.  [Jury Instructions at p. 21.]  They further
reflected that the Bartenwerfers asserted a breach of contract
claim against Mr. Buckley.  [Id.]

With respect to Mr. Buckley's breach of contract claim, the
Jury Instructions indicated that the relevant contract included
the contract for the purchase and sale of Property and the TDS,
among other documents.  [Id. at pp. 23 & 25.]  By this claim, Mr.
Buckley asserted that the Bartenwerfers breached the contract by,
among other things, failing to disclose information on the TDS

and that, as a result, Mr. Buckley was damaged. [Id.] The Jury Instructions advise that, to the extent Mr. Buckley succeeded on his breach of contract claim, the jury should award damages in an amount that put Mr. Buckley "in as good a position as he would have been if Defendant Bartenwerfer had performed as promised." [Id. at p. 37.]

The Jury Instructions indicated that the Bartenwerfers' breach of contract claim was premised on, among other things, Mr. Buckley's alleged refusal "to accept the $25,000.00 of hold back funds in satisfaction of all claims relating to the Property." [Id. at p. 23.]

With respect to Mr. Buckley's negligence claim, the Jury Instructions required the jury to find that the Bartenwerfers were negligent, that Mr. Buckley was harmed, and that the Bartenwerfers' negligence was a substantial factor in causing the harm. [Id. at p. 41.] The Jury Instructions also provided that the Bartenwerfers could be found responsible for the harm caused by certain Contractors to the extent the Bartenwerfers were negligent in hiring such Contractors. [Id. at pp. 43-44.] With respect to causation, the Jury Instructions advised the jury that if it found that the Bartenwerfers were a substantial factor in causing Mr. Buckley's harm, then they were responsible for the harm, even if other factors were involved in causing the harm. [Id. at p. 46.]

In the context of damages for the Bartenwerfers' negligence, the Jury Instructions provided a list of specific items of damages claimed by Mr. Buckley, including amounts necessary to remedy and/or repair damages caused by the heating system, sump

Case: 13-03185   Doc# 250   Filed: 07/01/19   Entered: 07/01/19 13:32:51   Page 10 of 45

pump, electrical, plumbing, water leakage, window issues, and master bath fan. [Id. at p. 47.] The Jury Instructions provided that Mr. Buckley must prove either the reasonable cost of repairing the harm or the reduction in the Property's value. [Id. at p. 50.] With respect to whether the cost of repair is reasonable, the jury was instructed to "decide if there is a reasonable relationship between the cost of repair and the representations by defendant Kate and David Bartenwerfer as to the condition of the property." [Id.]

The elements set forth for the claims of intentional misrepresentation, negligent misrepresentation, and Real Estate Seller's Nondisclosure of Material Facts ("Seller's Nondisclosure") tracked each other to a significant degree. [Id. at pp. 58, 59, & 64.] While intentional misrepresentation and negligent misrepresentation involved the representation of a fact that is not true, and a Seller's Nondisclosure involved a failure to disclose information, each of these claims required Mr. Buckley to have reasonably relied on the misrepresentation or omission which reliance resulted in harm to Mr. Buckley. [Id.] The Jury Instructions did not specify which fact (or facts) were alleged to have been misrepresented, but did specify that the undisclosed matters related to water leaks, window conditions, status of permits, and the fire escape. [Id.]

There was a single Jury Instruction that pertained to damages for intentional misrepresentation, negligent misrepresentation, and Seller's Nondisclosure. [Id. at p. 68.] If the jury found that Mr. Buckley proved any of those three claims, then the jury was to determine the amount of damages

which Mr. Buckley asserted to be: "1. The difference between the amount that Kieran Buckley paid and the fair market value of the property as the time of sale; and 2. Amounts that Kieran Buckley reasonably spent in reliance on false representation/failure to disclose/promise if those amounts would not otherwise have been spent in the purchase or acquisition of the property." [Id.]

With respect to damages on multiple legal theories, the Jury Instructions expressly provided that "[d]amages are recoverable only once under all legal theories." [Id. at p. 69.] The Verdict Form completed by the jury also reminded the jury that, while Mr. Buckley sought damages from the Bartenwerfers under multiple legal theories, "each item of damages may be awarded only once," and cautioned that "[y]ou cannot award the same damages under more than one legal theory as each damage is only recoverable once." [Bartenwerfers' RJN, Ex. L (Verdict Form) at p. 11.]

The jury ultimately found in favor of Mr. Buckley on his breach of contract, negligence, and Seller's Nondisclosure claims, but in favor of the Bartenwerfers on Mr. Buckley's claims of intentional misrepresentation and negligent misrepresentation. [Id. at pp. 1-10.] The jury found against the Bartenwerfers on their breach of contract claim. [Id. at p. 14.]

The jury awarded Mr. Buckley total damages of $444,671. [Id. at p. 13.] A portion of the damages were later reduced resulting in an amended judgment (the "State Court Judgment") in the amount of $234,671, plus 10% interest from October 2, 2012 until paid, and attorneys' fees and costs pursuant to a noticed motion. [Bartenwerfers' RJN, Exs. N & O.]

Case: 13-03185   Doc# 250   Filed: 07/01/19   Entered: 07/01/19 13:32:51   Page 12 of 45

### c.   The Non-Dischargeability Action

After entry of the State Court Judgment, Mr. Buckley filed a motion in the State Court for attorneys' fees, seeking $378,491.72.  After the motion was fully briefed, but before the State Court could issue a ruling, the Bartenwerfers filed a voluntary petition for relief in this court under Chapter 7 of the Bankruptcy Code,[6] Case No. 13-30827.  Mr. Buckley thereafter commenced this adversary proceeding, seeking entry of a judgment finding that the State Court Judgment was non-dischargeable pursuant to section 523(a)(2)(A).  [Dkt. 1.]

After two and a half more years of motion practice and discovery, the court convened a two-day trial.  On April 1, 2016, the court issued a Memorandum Decision (Dkt. 69) in which it found in favor of Mr. Buckley and against the Bartenwerfers on the section 523(a)(2)(A) claim.

The court held that the doctrine of collateral estoppel applied to the State Court Judgment with respect to the Seller's Nondisclosure claim to the extent the jury found that the Bartenwerfers failed to disclose material information that they knew or should have known, that Mr. Buckley did not know nor could have known about the omitted information, and the omission was a substantial factor in contributing to Mr. Buckley's harm.  [Memorandum Decision at p. 7.]  The court went on to find that Mr. Buckley had established the remaining elements of his section 523(a)(2)(A) claim – knowledge of the falsity of the statement

---

[6] Unless otherwise indicated, all statutory citations shall refer to Title 11 of the United States Code, aka the "Bankruptcy Code," and all citations to rules shall refer to the Federal Rules of Bankruptcy Procedure.

Case: 13-03185   Doc# 250   Filed: 07/01/19   Entered: 07/01/19 13:32:51   Page 13 of 45

and intent to deceive – at trial. [Id. at 8-19.] The court thus held that the Bartenwerfers' debt to Mr. Buckley with respect to the non-disclosure of water leaks, window conditions, permits, and the fire escape non-dischargeable under section 523(a)(2)(A). [Id. at p. 19.]

Thereafter, Mr. Buckley filed a motion for attorneys' fees by which he sought fees for work done on his behalf in the State Court Action and in the non-dischargeability action. [Dkt. 76; the "Fee Motion".] The Bartenwerfers opposed the Fee Motion. [Dkt. 88.] On June 23, 2016, the court entered the Initial Fee Order (Dkt. 95), by which it denied the Fee Motion to the extent Mr. Buckley sought fees for incurred in this adversary proceeding, but granted his request for fees and costs incurred in the State Court Action in an amount not to exceed $378,491, subject to a determination of reasonableness. [Initial Fee Order at p. 9.] In the Initial Fee Order, the court concluded that Mr. Buckley was not required to apportion the fees in order to have them declared non-dischargeable. [Id. at p. 6-7.]

The parties thereafter submitted additional briefs and evidence with respect to Fee Motion. [Dkts. 92, 98, 99, 100, & 104.] In his supplemental papers, Mr. Buckley advised the court that he had deducted fees "for work not directed at Bartenwerfer[,]" including fees in the amount of $5,404 for work performed on a motion for summary judgment filed by a third party in the State Court Action. [Dkt. 98 at p. 7; Dkt. 99 at p. 13.]

In their supplemental papers, the Bartenwerfers argued, among other things, that the court could not award fees for "clumped" time entries. [Dkt. 104 at pp. 2 & 5-7.] The court

rejected this argument, concluding that after reviewing "every time entry on every invoice submitted by Mr. Buckley's counsel[,]" the court would make deductions only for time billed for travel and time billed for clerical tasks. [Final Fee Order at p. 11.] The court exercised its discretion in assessing a value for such non-compensable tasks where they were clumped with compensable tasks, and calculated a total deduction of $27,265. [Id.] Ultimately, the court concluded as follows:

> Aside from the deductions explained herein, the court's careful review of the invoices submitted in support of the Motion leads it to conclude that Mr. Buckley's counsel's fees reflect efficient, reasonable work habits and billing practices and are not inflated or otherwise excessive. The fees also were appropriate given the vigor with which the parties contested the state court litigation and the fact that they ground through a three-week trial.

Final Fee Order at p. 12. The court awarded total fees of $348,483.53. [Id.]

The court rejected the Bartenwerfers' argument that Mr. Buckley was not entitled to fees incurred in litigation with other parties or that did not relate to the non-dischargeable claim. [Id. at p. 12.] In particular, the court concluded that the Bartenwerfers had failed to carry their burden of identifying specific entries that they believed were non-compensable. [Id. at pp. 12-13.] In reaching this conclusion, the court highlighted the fact that the Bartenwerfers had not introduced copies of the State Court Complaint. [Id.]

On September 2, 2016, the court entered the Final Fee Order (Dkt. 108), and thereafter a Second Amended Judgment, by which it awarded Mr. Buckley, among other things, attorneys' fees of $348,483.53, plus interest thereon accruing at a rate of 10% from

Case: 13-03185   Doc# 250   Filed: 07/01/19   Entered: 07/01/19 13:32:51   Page 15 of 45

October 4, 2012 forward, which amounts were declared to be non-dischargeable pursuant to section 523(a)(2)(A). [Dkt. 143.]

### d. The Cross-Appeals

Both Mr. Buckley and the Bartenwerfers appealed to the BAP. The BAP upheld the Memorandum Decision and Second Amended Judgment to the extent the court found the damages arising from the Seller's Nondisclosure claim were non-dischargeable as to Mr. Bartenwerfer, but vacated and remanded as to Mrs. Bartenwerfer.[7] With respect to the court's award of attorneys' fees, the BAP concluded that because the State Court had never liquidated the amount of Mr. Buckley's attorneys' fees or determined their reasonableness, it was up to this court to determine what portion, if any, flowed from Mr. Bartenwerfer's fraudulent conduct. [BAP Decision at p. 33.] The BAP noted that it could not make such determination based on the record before it and that "[w]ithout a copy of the state court complaint and jury instructions, the bankruptcy court was also unable to make this determination." [Id.] Accordingly, the BAP directed the court to reopen the record to make that determination.[8]

### e. Remand

Upon remand, the court first ordered the parties to file briefs with respect to whether Mr. Buckley or the Bartenwerfers bear the burden of proof with respect to the Apportionment Issue.

---

[7] The court has since issued a Memorandum Decision Following Remand in which it concluded that Mrs. Bartenwerfer did not have sufficient knowledge for purposes of section 523(a)(2)(A). [Dkt. 200; the "Knowledge Remand Decision".] That decision has been appealed. [Dkt. 210.]

[8] The BAP upheld the court's award of interest at a rate of 10% on the attorneys' fees, once ascertained on remand. [Id. at p. 38.]

Case: 13-03185   Doc# 250   Filed: 07/01/19   Entered: 07/01/19 13:32:51   Page 16 of 45

[Dkt. 186.]  The parties agree that Mr. Buckley bears the initial burden of establishing that the attorneys' fees are traceable to the non-dischargeable claim, and thereafter the burden shifts to the Bartenwerfers to identify or explain why some or all of those fees are not attributable to Mr. Bartenwerfer's fraud.  [Dkts. 188, 190, & 193.]

Mr. Buckley asserted that he had met his initial burden with the following pleadings ("Buckley's Apportionment Pleadings"): (a) Declaration of Janet Brayer in Support of Plaintiff's Motion for Prevailing Party Attorneys' and Expert's Fees (Dkt. 77); (b) Supplemental Declaration of Janet Brayer in Support of Plaintiff's Motion for Prevailing Party Attorneys' and Expert's Fees (Dkt. 92); (c) Declaration of Janet Brayer in Support of Award of Reasonable Attorneys' Fees, Costs and Interest (Dkt. 99; the "Brayer Decl."); and (d) Plaintiff's Request for Judicial Notice in Support of Prevailing Party Attorneys' Fees and Costs and Interest (Dkt. 100).  Each of Buckley's Apportionment Pleadings were previously analyzed by the court in ruling on the Fee Motion.

Buckley's Apportionment Pleadings reflect Mr. Buckley's position that each of the claims litigated in the State Court Action were both factually and legally intertwined, thus making apportionment impossible.  The court concluded that Mr. Buckley had met his initial burden of demonstrating that the attorneys' fees were traceable to the non-dischargeable claim and the burden thus shifted to the Bartenwerfers.  The court reopened the record to permit the Bartenwerfers to depose Ms. Brayer and to request electronic versions of Ms. Brayer's time sheets.  [Scheduling

Order (Dkt. 194), pp. 4-5.]  The court directed the Bartenwerfers to file a brief explaining why some or all of the fees were improperly apportioned to Mr. Bartenwerfer's fraud, and directed Mr. Buckley to file a reply.  The parties have timely filed their briefs.  [Dkts. 224, 225, 248, & 249.]

**III. SUMMARY OF THE ARGUMENTS**

   **a.   The Bartenwerfers' Position**

The Bartenwerfers argue that Mr. Buckley is entitled only to attorneys' fees that are traceable to proving the four defects underlying the Seller's Non-Disclosure claim, that is, (i) the water leak into the master bedroom, (ii) issues with the windows, (iii) the status of permits, and (iv) the status of the fire escape. [Defendants' Brief re Apportionment of State-Court Attorneys' Fees (Dkt. 224; "Bartenwerfers' Brief"), p. 2.] Because Mr. Buckley failed to appropriately trace his fees, the Bartenwerfers argue that his entire request should be denied or substantially reduced.  [Id.]

In support of their position, the Bartenwerfers start with the premise that all fees must be traceable to the non-dischargeable claim.  [Id. at pp. 7-10.]  The Bartenwerfers then take a brief detour to argue that Mr. Buckley is only entitled to fees that are reasonable and necessary, and he is not entitled to fees that have been block-billed.  [Id. at pp. 10-11.]  According to the Bartenwerfers, "the Court should disallow all block billed entries."  [Id. at p. 11.]

Returning to the matter of apportionment, the Bartenwerfers make a scant attempt to highlight examples of time entries that do not relate to the Seller's Nondisclosure claim.  [Id. at pp.

11-12.]  In this regard, the Bartenwerfers refer the court to spreadsheets annexed to the Olson Decl. (the "Spreadsheets"). [Id. at p. 12.]  The two Spreadsheets annexed to the Olson Decl. compile Ms. Brayer's time records for the period of January 29, 2009 through April 10, 2013:  one presented by category (Ex. P) and the other presented chronologically (Ex. Q).  While the Bartenwerfers took the time and effort to compile the Spreadsheets (each 26 pages in length) they did not bother to include any analysis of specific entries they deem problematic. The absence of analysis is only highlighted by the fact that the Spreadsheets include columns for "Notes", but those fields are completely blank (aside from two entries regarding an incorrect date).  Meanwhile, the few time entries that are specifically addressed in the Bartenwerfers' Brief are not highlighted in the Spreadsheets, which forced the court to dig through the Spreadsheets to locate the purported problematic entries.

In an apparent attempt to avoid identifying more than just a few problematic time entries, the Bartenwerfers grouped the time entries into nine categories:  (1) Appeal; (2) Attorneys' Fee Motion; (3) Collection Efforts; (4) Contractor Liability Claims; (5) Interpleader; (6) Occidental MSJ; (7) Other Unrelated Claims; (8) Pro-Rate for Nondisclosure Claim; and (9) Pro-Rate for Non-Disclosure Claim; Other Category.  [Bartenwerfers' Brief at pp. 6 & 12-13; Olson Decl., Ex. P.]  Again, despite taking the time to categorize the time entries (just as they took the time to itemize them in the Spreadsheets), the Bartenwerfers provide only minimal analysis.

The Bartenwerfers argue that time entries in the Contractor Liability Claims, Interpleader, Occidental MSJ,[9] and Other Unrelated Claims categories "are wholly objectionable and should be disallowed." [Id. at p. 12.] They posit that time entries in the Pro-Rate for Nondisclosure Claim; Other Category and Pro-Rate for Nondisclosure Claim categories (both of which concededly contain some time connected to the Seller's Nondisclosure claim) contain block billed entries and should thus be wholly disallowed or pro-rated to account for unrelated tasks.[10] [Id.] The Bartenwerfers assert that the time for Attorney's Fee Motion should be disallowed or reduced because it is excessive. [Id.] And, finally, they argue that the time entries in the Appeal and Collection Efforts categories, and all expenses[11] (except for certain depositions relating to the Seller's Nondisclosure claim), should be pro-rated because some of the work did not touch on the non-dischargeable claim. [Id. at pp. 12-13.]

With respect to the requests that the court pro-rate or reduce the fees, the Bartenwerfers do not suggest a specific reduction or pro-ration that the court should apply. Rather, they simply suggest that entire categories should be reduced or

[9] The Bartenwerfers acknowledge that Mr. Buckley has previously excluded time with respect to such motion. [Id. at p. 12.]

[10] In the Spreadsheets, certain portions of the text of the entries in the Pro-Rate for Nondisclosure Claim; Other Category is presented in red. [Olson Decl., Ex. P at pp. 20-26.] The Bartenwerfers do not address or explain the use of the red text with respect to these entries.

[11] Costs are not an issue on remand (see generally BAP Decision) and, accordingly, the court does not address the Bartenwerfers' request that any costs or expenses be reduced, particularly given that the Bartenwerfers have not provided a specific list of allegedly problematic costs.

Case: 13-03185   Doc# 250   Filed: 07/01/19   Entered: 07/01/19 13:32:51   Page 20 of 45

pro-rated in an amount to be determined by the court, or excised entirely.

In apparent recognition of the BAP's instruction that an analysis of the State Court Complaint and Jury Instructions be undertaken on remand, the Bartenwerfers annexed copies of these documents, along with other pleadings filed in the State Court Action, to the Bartenwerfers' RJN. [Dkt. 225.] Despite this, their brief is entirely bereft of any analysis of these documents. They similarly provided a copy of Ms. Brayer's January 20, 2019 deposition transcript, but failed to give more than a passing reference to Ms. Brayer's testimony in their brief. [Olson Decl., Ex. R.]

**b. Mr. Buckley's Position**

Mr. Buckley argues that the attorneys' fees awarded in the State Court Judgment arise from Mr. Bartenwerfer's fraud and are thus non-dischargeable. [Plaintiff Kieran Buckley's Brief in Response re Apportionment of State-Court Attorneys' Fees (Dkt. 248; "Buckley's Brief"), at p. 4.] He further asserts that the court is not obliged to apportion fees between dischargeable and non-dischargeable claims where there is a common core of facts or implicated issues, as is the case here. [Id. at pp. 5-6.] Moreover, he argues that the Bartenwerfers have failed to specify any particular time entry or category that is not traceable to Mr. Bartenwerfer's fraud and have failed to undertake an analysis of the State Court Complaint and Jury Instructions. According to Mr. Buckley, these failings are further proof that the facts and issues litigated in the State Court Action are intertwined and

Case: 13-03185   Doc# 250   Filed: 07/01/19   Entered: 07/01/19 13:32:51   Page 21 of 45

need not be disentangled for purposes of apportionment. [Id. at 6-7.]

With respect to block-billing, Mr. Buckley asserts that block billing is typical in this district and not a basis for disallowing fees entirely. [Id. at 7-8.] As that is the only apparent basis for disallowing or pro-rating the fees in the Pro-Rate for Nondisclosure Claim and Pro-Rate for Nondisclosure Claim; Other categories, Mr. Buckley argues that the Bartenwerfers have not met their burden with respect to such fees. [Id. at p. 19.] Moreover, he contends that the Bartenwerfers made the same argument in opposition to the Fee Motion, but did not renew such argument before the BAP, thereby leaving this court's ruling with respect to block-billing as law of the case. [Id. at pp. 19-20 (citing Plaintiff Kieran Buckley's Request for Judicial Notice in Support of Brief in Response re Apportionment of State-Court Attorneys' Fees (Dkt. 249; "Buckley's RJN"), Exs. 6 & 7 (Bartenwerfers' appellate briefs)).]

Unlike the Bartenwerfers, Mr. Buckley does undertake an analysis of the State Court Complaint and Jury Instructions, which he argues demonstrates that each of the causes of action are interrelated and premised on the same set of operative facts. Mr. Buckley highlights a variety of examples to support this position, including the fact the Jury Instructions identify the failure to disclose information on the TDS as a breach of contract, which failure is also the basis of the Seller's Nondisclosure claim. [Id. at p. 10 (citing Jury Instructions at pp. 23-24 & 64-67).]

Mr. Buckley also notes that the Bartenwerfers' breach of contract claim was premised upon an on an alleged waiver and release by Mr. Buckley of "all claims relating to the Property[,]" including the Seller's Nondisclosure claim, in exchange for a hold back of certain funds. [Id.] These held back funds were the subject of the interpleader action. Thus, according to Mr. Buckley, the time in the Interpleader category should not be disallowed. [Id. at pp. 18-19.]

According to Mr. Buckley, the Jury Instructions with respect to damages for each of the causes of action overlap and require proof of similar components. [Id. at pp. 11-12.] He explains that damages required assessment of the costs to repair as compared to the representations by the Bartenwerfers as to the condition of the Property, thus making their representations (or omissions) central to the assessment of damages on all claims. [Id. at p. 11.] Expert testimony was required to prove the reasonableness of costs and was not limited to any single cause of action. [Id.] And he points out that the State Court's express limitation of damages as being recoverable only once under all legal theories further demonstrates the overlapping nature of the damages under each of the causes of action. [Id. at p. 12.]

With respect to time spent litigating with the Contractors, Mr. Buckley argues that such litigation was traceable to the Seller's Nondisclosure claim as it related to attempts to shift liability for defects. [Id. at p. 13.] He highlights the fact that the Bartenwerfers and various of the Contractors asserted indemnification claims against one another, and asserted the

Case: 13-03185   Doc# 250   Filed: 07/01/19   Entered: 07/01/19 13:32:51   Page 23 of 45

fault of a third party and indemnification as affirmative defenses. [Id.] Mr. Buckley contends that determining the merits of these claims and defenses was necessarily part of determining the merits of the Seller's Nondisclosure claim and whether the Bartenwerfers had the requisite knowledge required for such claim. These claims and defenses were also central to a determination of damages and whether the Bartenwerfers were responsible for negligent hiring of any of the Contractors. [Id.] As a result, Mr. Buckley argues that the time in the Contractor Liability category should not be disallowed. [Id. at p. 18.]

With respect to the Bartenwerfers' categorization of the fees, Mr. Buckley asserts that they have failed to provide specific rationale by which to disallow or reduce the fees, or to explain how the fees are not intertwined with the fraud claim. [Id. at p. 14.] With respect to the time entries in the Appeal and Collection Efforts categories, Mr. Buckley notes that he has a right to such fees based on statute and controlling precedent. [Id. at pp. 16-18.] With respect the time entries in the Attorney's Fee Motion category, Mr. Buckley asserts that the amount of time spent was reasonable. [Id. at p. 17.] As to the time entries in the Other Unrelated Claims category, Mr. Buckle notes that this appears to be a catchall category and the Bartenwerfers have not presented any basis for their disallowance. [Id. at p. 19.]

Overall, Mr. Buckley asserts that the Bartenwerfers have not met their burden of providing the court with specific reasons for reducing or disallowing the requested fees, despite having had

Case: 13-03185   Doc# 250   Filed: 07/01/19   Entered: 07/01/19 13:32:51   Page 24 of 45

multiple opportunities to do so.  [Id. at p. 20.]  Thus, Mr.
Buckley asserts that the fees previously awarded by this court
must stand.

**IV.  ANALYSIS**

It is well settled that section 523(a)(2)(A) excepts from
discharge any liability arising from a debt obtained by fraud,
including attorneys' fees that are traceable to the fraud.  Cohen
v. De La Cruz, 523 U.S. 213, 218-19 & 223 (1998).  It is
undisputed that the State Court Judgment awarded Mr. Buckley
attorneys' fees.  The Bartenwerfers' bankruptcy filing
intervened, however, before the State Court could liquidate those
fees and determine what portion, if any, flowed from Mr.
Bartenwerfer's fraudulent conduct such that those fees would also
be non-dischargeable.

The party requesting fees "bears the burden of establishing
entitlement to an award and documenting the appropriate hours
expended and hourly rates."  Hensley v. Eckerhart, 461 U.S. 424,
537 (1983).  The court must also consider the "results obtained"
and, where feasible, award fees only for work done on successful
claims.  Id. at 434-35.  In the context of non-dischargeability,
the prevailing party bears the burden of establishing that
attorneys' fees sought stemmed from the non-dischargeable
liability.  See Plikaytis v. Roth (In re Roth), 662 F. App'x 540,
543 (9th Cir. 2016); Arciniega v. Clark (In re Arciniega), No.
CC-15-1123-KiGD, 2016 Bankr. LEXIS 343, at *41, 2016 WL 455428,
at *14 (B.A.P. 9th Cir. Feb. 3, 2016) ("Arciniega I") (remanding
for determination of what portion of attorneys' fees were
attributable to non-dischargeable claim).

Where a plaintiff's claims for relief involve a "common core of facts" or are based on "related legal theories", however, an action on such claims cannot be viewed as a series of discrete claims and the court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Hensley, 461 U.S. at 435. Thus, "[a]pportionment is not required when the issues in the fee and nonfee claims are so inextricably intertwined that it would be impractical or impossible to separate the attorney's time into compensable and noncompensable units." Harman v. City & County of San Francisco, 158 Cal. App. 4th 407, 417 (Cal. Ct. App. 2007) (quotation and citation omitted).

In the context of attorneys' fees in a non-dischargeability action, the BAP has observed that "when the facts, evidence and/or legal work substantially overlap, the trial court typically does not abuse its discretion in declining to apportion fees between compensable and non-compensable units." Arciniega v. Clark (In re Arciniega), BAP No. CC-17-1154-SAKu, 2017 Bankr. LEXIS 4215, at *25, 2017 WL 6329748, at *10 (B.A.P. 9th Cir. Nov. 20, 2017) ("Arciniega II") (citing cases).

Once the prevailing party has met its initial burden of establishing the fees sought, the burden shifts to the opposing party to submit evidence challenging the accuracy or reasonableness of the fees. Cotton v. City of Eureka, 889 F. Supp. 2d 1154, 1176 (N.D. Cal. 2012). "The party opposing fees must specifically identify defects or deficiencies in the hours requested. Conclusory and unsubstantiated objections are insufficient to warrant a reduction in fees." Id. (citation

Case: 13-03185   Doc# 250   Filed: 07/01/19   Entered: 07/01/19 13:32:51   Page 26 of 45

omitted); see Moreno v. City of Sacramento, 534 F.3d 1106, 1116 (9th Cir. 2008) ("[i]f opposing counsel cannot come up with specific reasons for reducing the fee request that the district court finds persuasive, it should normally grant the award in full, or with no more than a haircut"); Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Ass'n, 163 Cal. App. 4th 550, 564 (Cal. Ct. App. 2008) (explaining that opposing party bears burden of pointing to specific items challenged with sufficient evidence and argument and cautioning that "[g]eneral arguments that fees claimed are excessive, duplicative, or unrelated do not suffice").

Where an opposing party challenges a fee award on the basis of block-billing, they must do more than assert a blanket objection to block-billed time.  Indeed, though frowned upon in bankruptcy courts, block-billing is an accepted practice in both state and federal district courts in California.  See Stonebrae, L.P. v. Toll Bros., Inc., No. C-08-0221 EMC, 2011 U.S. Dist. LEXIS 39832, at *28-29, 2011 WL 1334444, at *9 (N.D. Cal. Apr. 7, 2011) ("[b]lock-billing is a typical practice in this district, and blocked-bills have been found to provide a sufficient basis for calculating a fee award") (citations omitted); Christian Research Inst. v. Alnor, 165 Cal. App. 4th 1315, 1325-26 (Cal. Ct. App. 2008) (describing block-billing as "not objectionable per se").

Where a review of time entries reveals that despite being block-billed, the entries "contain sufficient detail to identify precisely the task accomplished[,]" the party opposing the fees must present specific challenges, such as identifying blocks of

Case: 13-03185   Doc# 250   Filed: 07/01/19   Entered: 07/01/19 13:32:51   Page 27 of 45

time billed for tasks unrelated to the claims on which the party seeking fees prevailed. See PQ Labs, Inc. v. Yang Qi, No. 12-0450, 2015 U.S. Dist. LEXIS 5829, at *8-9, 2015 WL 224970, at *3 (N.D. Cal. Jan. 16, 2015) (denying defendants' request that plaintiffs' fees be reduced by 10 to 30% due to block-billing and noting that defendants had ample opportunity and information to challenge specific entries, but declined to do so); cf. Welch v. Metro Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007) (vacating district court's 20% across-the-board reduction for block-billing where fewer than half of the entries were block-billed).

In the context of apportionment, where a prevailing party has established that his or her claims are inextricably intertwined, the opposing party must make objections to specific time entries. It is not enough to summarily assert that the prevailing party has not established that the fees were not incurred with respect to the non-dischargeable claim, and that the amount of time spent was unreasonable. Arciniega II, 2017 Bankr. LEXIS 343, at *25-30.

In Arciniega I, the BAP remanded to the bankruptcy court for a determination of what portion of the prevailing creditor's attorneys' fees were attributable to his non-dischargeable contract claim as opposed to his fraud claim for which he was not entitled to an award of attorneys' fees. Arciniega I, 2016 Bankr. LEXIS 343, at *41. On remand, the prevailing creditor submitted detailed time entries and the bankruptcy court reviewed those fees and made deductions for fees determined to be unreasonable or attributable to the fraud claim. Arciniega II, 2017 Bankr. LEXIS 4215, at *25-26. The prevailing creditor also

argued that the claims were premised on a common core of facts and were inextricably intertwined, and the bankruptcy court agreed. Id. at *26. The BAP also agreed, noting that the fraud claim was premised on the debtor's understanding of her obligations under the contract, and there could have been no actionable promissory fraud claim without establishing the breach of contract claim. Id. at *28.

Despite ample opportunity to review the time entries and make specific objections as being non-compensable, the debtor in Arciniega II failed to do so. Id. at *26. Instead, she submitted a "barebones objection" in which she summarily asserted that the prevailing party had not established that the fees were related to compensable contract issue. Id. Ultimately, the BAP found no reason to disturb the bankruptcy court's fee award, emphasizing the fact that the debtor had "done virtually nothing to establish that the bankruptcy court's deductions were insufficient." Id. at *29.[12]

With the foregoing in mind, we turn to the fees at issue in this case. From the beginning, Mr. Buckley has maintained that the facts and issues resolved in the State Court Action were intertwined, thus making apportionment of his attorneys' fees both impossible and unnecessary. The Bartenwerfers vociferously

[12] Earlier in the Arciniega II decision, the BAP had reversed the bankruptcy court's liquidated damages award and remanded to permit trial on proximate cause and damages. Id. at *31. As the attorneys' fees were only available to a plaintiff who obtained a recovery on his claims, and the liquidated damages had served as the creditor's recovery, the BAP vacated the bankruptcy court's fee award. Id. If, on remand, the bankruptcy court ultimately awarded damages to the creditor, the BAP noted that the bankruptcy court could reinstate or amend its last fee award. Id.

Case: 13-03185   Doc# 250   Filed: 07/01/19   Entered: 07/01/19 13:32:51   Page 29 of 45

disagree but have presented little in the way of evidence or analysis to support their position.

### a. The Claims in the State Court Action are Inextricably Intertwined

Though the State Court Complaint asserts eight causes of action, each is premised on an identical set of operative facts. Specifically: that the Bartenwerfers[13] had remodeled the Property in a defective manner, including by failing to hire and adequately manage competent Contractors, had caused damage to the Property as a result, and thereafter sold the Property to Mr. Buckley. Based on these facts, Mr. Buckley pleaded multiple, alternative theories of relief, which is a common litigation tactic. Hensley, 461 U.S. at 434.

The Jury Instructions further confirm the interrelatedness of the claims. The contract for purposes of the breach of contract claim was comprised of, among other documents, the TDS which formed the basis of the Seller's Nondisclosure claim. In proving the breach of contract claim, Mr. Buckley had to prove that the Bartenwerfers breached the TDS by failing to make adequate disclosures therein. Similarly, the negligence claim required proof of the defective work on the Property which

---

[13] In the Knowledge Remand Decision, this court concluded that Mrs. Bartenwerfer did not have sufficient knowledge for purposes of section 523(a)(2)(A). Whether Mrs. Bartenwerfer had sufficient knowledge is not among the elements of the Seller's Nondisclosure claim, rather, the jury was required to determine whether she knew or reasonably should have known about the relevant defects. [Jury Instructions at p. 64.] Moreover, the State Court Complaint, Jury Instructions, and State Court Judgment do not differentiate between Mr. and Mrs. Bartenwerfer – their liability is premised on the same set of facts and issues. Thus, in analyzing whether the fees should be apportioned, the court will generally refer to both of the Bartenwerfers, rather than solely Mr. Bartenwerfer.

resulted in breach of the operative contract and about which the Bartenwerfers failed to make adequate disclosures.

With respect to specific defects, the Bartenwerfers correctly point out that, while the State Court Complaint contained twelve Alleged Defects, the Seller's Nondisclosure claim is premised on only four (of which just two are expressly listed as Alleged Defects). A review of the TDS reveals, however, that the Bartenwerfers were required to disclose all of the Alleged Defects to the extent they existed at the time of sale of the Property to Mr. Buckley and were known to the Bartenwerfers. As is common in litigation, the claims and scope of damages appear to have narrowed as the parties approached and ultimately went to trial.

Damages for each of the claims required similar analyses of the costs to repair the Property and the differential value in the Property as represented versus its actual condition. This, in turn, required expert testimony. The Jury Instructions' and the Verdict Form's emphasis on awarding damages only once for each defect, even if the jury found for Mr. Buckley on more than one of his claims, further confirms that the claims were premised on the same set of facts – the same set of defects and resulting damages.

The Bartenwerfers attempted to shift liability on all claims to the Contractors by asserting affirmative defenses of fault of a third party and indemnification and by filing the Bartenwerfers' Cross-Complaint. Meanwhile, the Jury Instructions make clear that the Bartenwerfers could be held liable for their negligent hiring and management of the Contractors. As a result,

it was necessary to determine the role each of the Contractors played in causing the Alleged Defects, and to determine whether the Bartenwerfers were negligent in hiring and managing such Contractors.  The Bartenwerfers' management and hiring of the Contractors speaks to both their liability for the work ultimately performed by such Contractors and their knowledge of whether the work was defective.  Indeed, as Ms. Brayer explained in her deposition, a central component of Mr. Bartenwerfer's defense was that the Contractors were responsible for any Alleged Defects and he had no knowledge of those defects.  [Brayer Tr. at 48:19-49:2.]  Determining whether this defense was viable necessitated resolving the Contractors' cross-claims.

Overall, a review of the State Court Complaint, the Bartenwerfers' Answer, the Bartenwerfers' Cross-Complaint, the various pleadings filed by the Contractors (to the extent provided to this court), the Jury Instructions, and the Verdict Form lead to the conclusion that the claims asserted by Mr. Buckley in the State Court Action were based on a common core of facts and implicated issues such that they are inextricably intertwined.  As a result, this court is not obliged to apportion Mr. Buckley's attorneys' fees.  Hensley, 461 U.S. at 434; Arciniega II, 2017 Bankr. LEXIS 4215, at *25.

This court previously conducted a thorough review of the time entries submitted by Mr. Buckley's counsel and, after certain deductions for travel and clerical work, determined that the fees were reasonable and appropriate.  [Final Fee Order at p. 11.]

**b. The Bartenwerfers Have Not Established that the**

**Attorneys' Fee Should be Reduced or Disallowed**

Having determined that Mr. Buckley met his initial burden of demonstrating that the attorneys' fees are properly allocated to the non-dischargeable claim, and that such time is reasonable and appropriate (subject to the reduction previously applied by this court), the burden shifts to the Bartenwerfers to cite specific reasons for reducing or disallowing the fees with sufficient argument and evidence. See <u>Moreno</u>, 534 F.3d at 1116; <u>Premier Med.</u>, 163 Cal. App. 4th at 564. The Bartenwerfers have failed to satisfy their burden.

With respect to block-billing, as discussed above, while such practice may result in some reductions for specific entries, it is not a basis for disallowing all fees, as the Bartenwerfers suggest. <u>Stonebrae</u>, 2011 U.S. Dist. LEXIS 39832, at *29. Moreover, a party objecting to fees on the basis that they are improperly block-billed must identify specific entries that are problematic. <u>PQ Labs</u>, 2015 U.S. Dist. LEXIS 5829, at *8. Here, the Bartenwerfers had ample time and opportunity to challenge specific entries. Instead, they elected simply to ask this court to exercise its general discretion to reduce or disallow broad categories of time on the basis that some of the entries were block-billed. The court declines such request now, as it did when it previously reviewed the time entries in ruling on the Fee Motion.[14] It is also worth noting that the Bartenwerfers did not

---

[14] Though the Bartenwerfers referred to such practice as "clumping" in their opposition to the Fee Motion, the court views "clumping" and "block-billing" as one and the same.

raise this court's rejection of its block-billing argument on appeal to the BAP.[15]  [Buckley's RJN, Exs. 6 & 7.]

        i. <u>Categories</u>

Turning to the Bartenwerfers' categorization of fees, the court is similarly unconvinced by their arguments for reducing or disallowing fees by category.

**Appeal.**  As Mr. Buckley correctly explains in his brief, time spent on appeal is properly included in an award of attorneys' fees.  <u>Morcos v. Bd. of Retirement</u>, 51 Cal. 3d 924, 927 (1990).  Although Mr. Buckley filed a cross-appeal, such was engendered by the Bartenwerfers' appeal in the first instance. The Bartenwerfers argue that the fees in this category "should be prorated because some of the work would have related to the nondischargeable claim, but others-such as Buckley's own appeal- did not."  [Bartenwerfers' Brief at pp. 12-13.]  Without providing copies of the appellate briefs or additional analysis of the issues resolved on appeal, or highlighting specific problematic time entries, the Bartenwerfers have not carried their burden of demonstrating that the time spent on appeal was wholly unrelated to the Seller's Nondisclosure claim. Accordingly, the court declines to prorate this category of time.

**Attorneys' Fee Motion.**  In suggesting that this court should disallow or reduce the fees in this category, the Bartenwerfers

---

[15] Mr. Buckley seems to suggest that this court's prior ruling on the block-billing argument is "law of the case".  [Buckley's Brief at p. 20 (citing <u>American Express Travel Related Servs. Co. v. Franschilla</u> (<u>In re Franschilla</u>) 235 B.R. 449, 454 (B.A.P. 9th Cir. 1999)).]  As the <u>Franschilla</u> decision makes clear, the "law of the case" doctrine is applicable only to decisions by appellate courts.  <u>Franschilla</u>, 235 B.R. at 454.  The BAP did not address the issue of block-billing; thus, there is no "law of the case" on this issue.

argue only that the fees are "excessive." [Id. at p. 12.] The Bartenwerfers do not argue that these fees are unrelated to the non-disclosure claim. This court has previously reviewed these fees and concluded that they were reasonable and therefore declines to reduce or disallow the fees in this category.

**Collection Efforts.** As Mr. Buckley correctly explained in his brief, California law plainly allows attorneys' fees for collection efforts. Cal. Civ. Proc. Code. § 685.040. The Bartenwerfers' suggestion that some of the time spent in this category would not have related to the non-dischargeable claim suggests that parties prevailing on multiple theories, but obtaining a singular money judgment (as was the case here), will attempt to collect on individual portions of that judgment in a piecemeal fashion. This makes no practical or legal sense. The Bartenwerfers' failure to highlight specific time entries that related to collection on only a portion of the State Court Judgment confirms the weakness of this argument. Accordingly, the court declines to prorate the time entries in this category.

**Contractor Liability Claims.** The Bartenwerfers argue that all fees in this category "are wholly objectionable and should be disallowed." [Bartenwerfers' Brief at p. 12.] This argument only makes sense in the vacuum of the Bartenwerfers' Brief which contains no analysis of the State Court Complaint, cross-complaints, answers, and Jury Instructions. As set forth above, an analysis of these documents makes abundantly clear that the claims against the Contractors are wholly intertwined with Mr. Buckley's claims against the Bartenwerfers. Accordingly, the

Case: 13-03185   Doc# 250   Filed: 07/01/19   Entered: 07/01/19 13:32:51   Page 35 of 45

court declines to wholly disallow the time entries in this category.

**Interpleader.**  With little explanation, the Bartenwerfers argue that the time entries in this category (along with two additional entries from July 27, 2012 and August 2, 2012) must be wholly disallowed.  Mr. Buckley clarifies that this time related to the Bartenwerfers' argument that Mr. Buckley had waived and released his claims by accepting $24,000, which funds were subject of the interpleader action by Old Republic.  [Buckley's Brief at p. 10 (citing Jury Instructions at p. 23).]  Resolving whether Mr. Buckley waived and released all claims was essential succeeding on all claims.  Without more evidence, the court concludes that the Bartenwerfers have failed to meet their burden for having these time entries disallowed.

**Occidental MSJ.**  Mr. Buckley has previously reduced his fee request for time spent on this matter in an amount greater than the Bartenwerfers suggest belongs in this category.  The court declines to make any further reduction.

**Other Unrelated Claims.**  This category appears to be a mixed bag that includes time related to mediation, experts, and research on claims.  Rather than highlighting specific entries and providing a clear argument for disallowing such entries, the Bartenwerfers make a blanket demand that all time in this category must be disallowed.  The court concludes that the Bartenwerfers have not met their burden and declines their request to disallow the fees in this category.

**Pro-Rate for Nondisclosure Claim.**  While the Bartenwerfers concede that some of the time entries in this category are

Case: 13-03185   Doc# 250   Filed: 07/01/19   Entered: 07/01/19 13:32:51   Page 36 of 45

connected to the non-dischargeable claim, they argue that because the entries are block billed, they should be disallowed in their entirety.  Alternatively, the Bartenwerfers argue the fees should be pro-rated to account for unrelated tasks.  As explained above, block billing is not a basis for wholly disallowing fees, particularly where a review of the block billed entries reveals the entries to be sufficiently detailed for the court to assess the reasonableness of the time.  This court has previously rejected the Bartenwerfers' block billing argument, and does so again here.

The Bartenwerfers have had more than enough time to highlight specific entries that contain time unrelated to the non-dischargeable claim.  Instead, they have made a blanket request that a category containing 518.42 hours be disallowed because some of the entries might include unrelated time.  They have wholly failed to meet their burden and the court declines to disallow or reduce the time entries in this category.

**Pro-Rate for Nondisclosure Claim; Other Category.**  The Bartenwerfers present the same arguments with respect to the time entries in this category as they did with respect to the time entries in the Pro-Rate for Nondisclosure Claim category.  The only apparent difference is that there are block billed entries that contain time that belongs in one of the other categories.  As set forth above, the court finds that the Bartenwerfers have failed to carry their burden of demonstrating that any of the fees should be disallowed or reduced on a category basis.  Accordingly, the court declines to reduce or disallow the time entries in this category.

Case: 13-03185   Doc# 250   Filed: 07/01/19   Entered: 07/01/19 13:32:51   Page 37 of 45

In addition to the foregoing broad categories of time entries, the Bartenwerfers took issue with time spent on resolving the permit issue and damages for negligence and strict liability. [Bartenwerfers' Brief at p. 11.] The Bartenwerfers fail to cite to any specific time entries that relate to these issues. Moreover, they fail to adequately explain how time spent on these matters is unrelated to the Seller's Nondisclosure claim. The failure to make adequate disclosure with respect to the status of permits is among the four express bases for the Seller's Nondisclosure claim. And, as discussed above, the analysis of damages on all claims required similar and overlapping analysis. Accordingly, the court declines to make any reductions on account of these issues.

Overall, the Bartenwerfers have not met their burden of establishing that the fees in any particular category should be subject to a mechanical reduction or disallowance, or that doing so would be appropriate for this court to do in any event. See Ryan v. Editions Ltd. W., Inc., 786 F.3d 754, 764-65 (9th Cir. 2015) (finding district court erred in mechanically excising entire categories of fees and directing district court to provide "a more detailed explanation for its reductions and [to] consider the interrelated nature of the claims involved in the underlying litigation" on remand).

ii. Specific Objections

As noted above, the Bartenwerfers made a paltry attempt to highlight specific time entries that they believe are not properly apportioned to the non-dischargeable claim. The court will briefly review these specific entries.

The Bartenwerfers argue that it was not necessary to engage in extensive efforts to serve process of various Contractors and cite the following time entries (Bartenwerfers' Brief at p. 11):[16]

- May 24, 2010 – Time entry of 0.1 hours for: "Review new order to show cause".
- May 26, 2010 – Time entry of 0.1 hours for: "Review continued order to show cause".
- June 15, 2010 – Time entry of 0.9 hours for: "Draft declaration -motion for service by publication".
- June 28, 2010 – Time entry of 0.8 hours for: "Final motion for publication – Abraham".
- December 20, 2011 – Time entry of 0.7 hours for: "Review multiple discovery requests from Bartenwerfer; review response to order to show cause – Glen French".

[Time Sheets at pp. 21, 22, & 48.] To the extent the foregoing entries relate to time spent serving the Contractors (which is not clear from many of the cited entries), the court declines to disallow such time in light of the interrelatedness of the claims by and against the Contractors.

The Bartenwerfers take issue with time spent responding to a motion *in limine* brought by Occidental Express concerning prior litigation. [Bartenwerfers' Brief at p. 11.] The Bartenwerfers cite only one specific time entry from August 9, 2012 which is a

---

[16] In their brief, the Bartenwerfers do not provide information beyond the date of the allegedly problematic entries. They also did not highlight the entries in the Spreadsheets. Accordingly, the court referred to the time sheets annexed to the Brayer Decl. as Exhibit 3 (Dkt. 99-3; "Time Sheets") which are among Buckley's Apportionment Pleadings.

block entry that includes, among other things, reviewing jury instructions, drafting opposition to Occidental motion to exclude prior litigation, and research on damages and current value of the property. [Time Sheets at p. 68.] Occidental was apparently hired by Mr. Bartenwerfer as a permit expediter and there was evidence that it managed some of the work done on the Property. [Buckley's RJN, Ex. 2 (Order Denying Occidental Express' Motion for Summary Judgment).] Given Mr. Bartenwerfer's potential liability for negligent hiring and supervision of Contractors, such as Occidental, whether Occidental had a prior litigation history was relevant to his liability. Accordingly, the court declines to disallow any portion of the cited time entry, or any other time entry that may relate to Occidental's motion *in limine*.

The Bartenwerfers take issue with discovery relating to defects not specifically included in the Seller's Nondisclosure claim, such as those relating to the heating system and electrical work. [Bartenwerfers' Brief at p. 12 (citing time entries on July 21, 2010, March 22, 2011, and March 23, 2011); see Time Entries at pp. 23 & 33.] These defects are not specifically listed among the Alleged Defects, but the State Court Complaint indicated that Mr. Buckley's claims cover as yet undiscovered defects. [State Court Complaint at ¶ 13.] Moreover, to the extent proven, defects relating to the heating system and electrical work should have been disclosed by the Bartenwerfers in the TDS. Accordingly, time spent conducting discovery with respect to all alleged defects at the Property was appropriate and necessarily related to each of Mr. Buckley's

claims for relief.  The court declines to disallow any portion of
the cited time entries, and declines to locate and disallow any
other time entries relating to this issue.

   The Bartenwerfers object to time spent on issues relating to
Mr. Bartenwerfer's status as a contractor, citing the time entry
on February 24, 2012.  [Bartenwerfers' Brief at p. 12.]  That
entry is for 7.8 hours for the following work: "Continue
organizing trial exhibits; meet with Kieran; call to Veronica;
review jury instructions".  [Time Sheets at p. 57.]  The court
does not understand how this time entry relates to the purported
issue.  Moreover, the court disagrees that Mr. Bartenwerfer's
status as a contractor is unrelated to the non-dischargeable
claim – rather, it would seem to speak to his knowledge and
awareness of the condition of the Property.  Accordingly, the
court declines to disallow any portion of this time entry, and
declines to locate and disallow any other time entry that
involves work relating to this issue.

   The Bartenwerfers also object to research regarding lay
opinion concerning contract interpretation, citing the time entry
on February 23, 2012.  [Bartenwerfers' Brief at p. 12.]  That
entry is for 7.5 hours for the following work: "Prepare trial
brief; further research on jury instructions and contractor
status".  [Time Sheets at p. 57.]  As with the prior entry, the
court cannot discern what portion of the time entry is
problematic.  The court also disagrees that lay opinion
concerning contract interpretation is unrelated to the non-
dischargeable claim.  Mr. Bartenwerfer's understanding of his
obligations under the contract of sale, which incorporated the

TDS, speaks to whether he knowingly failed to disclose defects. As such, the court declines to disallow any portion of this entry, and declines to locate and disallow any other time entries that involve work done on this issue.

The Bartenwerfers next object to time spent at trial on "issues far outside the scope of this adversary proceeding[,]" citing entries for work concerning expert witness testimony on September 18, 2012 and September 19, 2012. [Bartenwerfers' Brief at p. 11.] Both of these time entries make references to attending trial and work apparently related to expert witnesses. [Time Sheets at p. 79.] The Bartenwerfers do not provide any explanation of how expert testimony was unrelated to the Seller's Nondisclosure claim, and certainly provide no explanation as to how time spent at trial was unrelated to such claim. As discussed above, the Jury Instructions made clear that the damages for each of the claims relied on similar analyses of costs to repair and the difference in value between the Property as sold and as represented – these analyses necessarily required expert witness testimony. Accordingly, the court declines to disallow any portion of the two cited entries, and declines to locate and disallow additional entries that relate to this issue.

Finally, the Bartenwerfers argue that Mr. Buckley settled disputes with several of the Contractors, resulting in good faith settlement motions, none of which are traceable to the Seller's Nondisclosure claim. [Bartenwerfers' Brief at p. 12.] In support of this objection, the Bartenwerfers cite to a time entry on January 25, 2012 which is a block entry for 5.1 hours that includes a number of tasks, including reviewing a stipulation of

settlement. [Time Sheets at p. 52.] As discussed above, the claims against and by the Contractors were intertwined with Mr. Buckley's claims against the Bartenwerfers, including the Seller's Nondisclosure claim. Accordingly, the court declines to disallow any portion of the cited time entry, and declines to locate and disallow any other time entries that involve Mr. Buckley's settlement with Contractors.

As was the case in Arciniega II, the Bartenwerfers had ample opportunity to review the time entries and make objections to specific entries as being unreasonable or not properly allocated to the Seller's Nondisclosure claim. Instead, they have provided little analysis, highlighted a random smattering of entries that appear to be appropriately apportioned to the Seller's Nondisclosure claim, and simply ask this court to disallow or substantially reduce the fees sought. Their arguments are unavailing.

The court has previously undertaken a thorough analysis of the time billed by Mr. Buckley's counsel and determined that it was reasonable and appropriate (subject to certain minor reductions). An analysis of the State Court Complaint and Jury Instructions, along with other pleadings filed in the State Court Action, confirm the intertwined nature of the claims asserted by Mr. Buckley. The Bartenwerfers have not carried their burden of proving otherwise. Accordingly, the court exercises its discretion and declines to apportion Mr. Buckley's fees.

Case: 13-03185   Doc# 250   Filed: 07/01/19   Entered: 07/01/19 13:32:51   Page 43 of 45

**V. CONCLUSION**

For the foregoing reasons, the court rules in favor of Mr. Buckley on the Apportionment Issue and **ORDERS** that Mr. Buckley shall be allowed non-dischargeable attorneys' fees in the amount of **$348,483.53**, plus interest at a rate of 10% from October 4, 2012 forward. The court will enter judgment consistent with this memorandum decision.

**\*\*END OF ORDER\*\***

## Court Service List

[None]